Westlaw.

Not Reported in A.2d

Not Reported in A.2d, 1998 WL 281053
**(Cite as: Not Reported in A.2d)**

Page 1

**C**
Not Reported in A.2d, 1998 WL 281053
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware.
Re Joseph P. ELLIS and Linda Ellis
v.
Brian C. DAVIS, now deceased, and John H.
Williams, Jr., Administrator of the Estate of Brian
C. Davis,
**No. C.A. 97C-08-014-WTQ.**

Argued: April 15, 1998.
Decided: May 11, 1998.

Letter Opinion and Order on Defendant's Motion
for Summary Judgment-Motion Granted.

Michael D. Carr , Kyle Kemmer , Ament Lynch &
Carr, Wilmington, DE.
David G. Culley , Tybout Redfearn & Pell,
Wilmington, DE.
*1 Gentlemen:

This is the Court's decision on Defendant's Motion
for Summary Judgment pursuant to Superior Court
Civil Rule 56. For the reasons herein stated,
Defendant's Motion is GRANTED.
*FACTS*
On November 6, 1996 Plaintiffs Joseph and Linda
Ellis ("Plaintiffs") filed suit against Brian C. Davis
and Star States Leasing Corporation for personal
injuries arising out of an automobile accident that
occurred on December 22, 1994. On November 18,
1996, the Sheriff attempted to Defendant Brian C.
Davis ("Mr.Davis") who had died on February 13,
1995. The writ was returned *non est inventus*. A
more accurate return would have been *mortuus est,*
but an attached note specifically indicated the death.

On March 31, 1997, Defendant filed a Motion to
Dismiss for failure to effect service within 120 days.

On July 22, 1997, this Court granted a Motion to
Dismiss on behalf of Mr. Davis for failure to serve
process within the time provided in Superior Court
Civil Rule 4(j).

*See Ellis v. Davis et al.,* Del.Super., C.A. No.
96C-11-035-WTQ, Quillen, J. (July 22, 1997). FN1
The Court left open the possibility of Plaintiff
bringing a second suit under Delaware's saving
statute, 10 *Del.C.* § 8118(a) ("the savings statute or
statute"), which allows a Plaintiff to bring a new
action, without leave of Court, where a prior suit
has been defeated for specific reasons stated in the
statute. *Id.* at 4. The Court specifically stated: "
Should a second lawsuit be filed, the parties will
undoubtedly debate whether Plaintiffs meet the
conditions justifying application of the savings
statute to the second lawsuit, but that is not a matter
which the Court can address at this time."*Id.*

FN1. The Court calls the attention of
counsel to the recent Supreme Court
opinion in *Dolan v. Williams,* Del.Super.,
No. 289, 1997, Hartnett, J. (Mar. 6, 1998).
This Court has always felt it went the extra
mile with regard to discretionary rulings to
save lawsuits on the merits from the
mistakes of counsel. But the *Dolan* case, at
first blush, exhibits an even more liberal
and permissive attitude on the part of the
Supreme Court. Two things are
particularly striking. First, the Supreme
Court relied on the fact that the
Defendant's insurer requested the Plaintiff
not to seek a default judgment. This
reliance is contrary to the normal
approach, which was alluded to in the
opinion of the predecessor case to the case
at bar, that pre-service of process contacts
between the Plaintiff and the Defendant's
insurer, which occur in the great majority
of cases, have little relevancy on the
Plaintiff's obligation to obtain personal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A117

Not Reported in A.2d                                                                                    Page 2

Not Reported in A.2d, 1998 WL 281053
**(Cite as: Not Reported in A.2d)**

jurisdiction over the Defendant. Exploration of those contracts, as suggested in *Dolan,* on a supplemental factual record developed on appeal, if carried to extremes, obviously could raise serious, and perhaps unnecessary, evidentiary problems. Second, the opinion could also be read to suggest some obligation, in some circumstances, on the part of the Defendant's insurer or counsel not to engage in settlement discussions without advising Plaintiff's counsel of the state of service of process. But rather than broadly construing *Dolan* as a general relaxation of traditional standards, this Judge feels the case should be narrowly limited to its precise facts and the inference, from the Supreme Court's language, that the exchange between Plaintiff's counsel and the insurer amounted to a positive misrepresentation, albeit innocent, by the insurer to the effect that proper service had been accomplished. Surely the Supreme Court did not want to suggest that routine settlement conversation would relieve Plaintiff's counsel from routinely checking with the Prothonotary's office to ensure that the summons had been timely served. It was " the insurer's request not to enter a default" that was the factual focus of the decision. While it might be self-serving and perhaps others can better judge in retrospect, I do not believe *Dolan* would have affected the result in *Ellis v. Davis and Star States Leasing Corp .,* the predecessor to the instant case. I specifically note, however, that *Dolan* was not before this Court at the time of the earlier opinion.

On August 1, 1997, Plaintiffs re-filed their personal injury action, substituting John D. Williams, Jr. as the Defendant and administrator of the estate of Brian Williams ("Defendant"), claiming relief from the bar of the statute of limitations through the application of the savings statute. FN2 The Defendant filed his Motion for Summary Judgment on March 2, 1998, asserting that 10 *Del.C.* § 8118(a) does not apply to save this action. FN3

FN2. Title 10 *Del.C.* § 8118(a) provides:
(a) If an action duly commenced within the time limited therefor in this chapter, the writ fails of a sufficient service or return by any unavoidable accident, or by any default or neglect of the officer to whom it is committed; or if the writ is abated, or the action otherwise avoided or defeated by death of any party thereto, or for any matter of form; or if after a verdict for the plaintiff, the judgment shall not be given for the plaintiff because of some error appearing on the face of the record which vitiates the proceedings; or if a judgment for the plaintiff is reversed on appeal or a writ of error; a new action may be commenced, for the same cause of action, at any time within one year after the abatement or other determination of the original action, or after the reversal of the judgment therein.

FN3. Defendant Star States Leasing Corporation was separately dismissed for other reasons in the prior action and was not sued again in this second action.

**DISCUSSION**

When considering a motion for summary judgment under Superior Court Civil Rule 56, the Court's function is to examine the record to determine whether genuine issues of material fact exist. *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.,* Del.Super., 312 A.2d 322, 325 (1973). If, after viewing the record in a light most favorable to the nonmoving party, the Court finds there are no genuine issues of material fact, summary judgment is appropriate. *Id.* The Court's decision must be based only on the record presented, including all pleadings, affidavits, depositions, admissions, and answers to interrogatories, not on what evidence is " potentially possible." *Rochester v. Katalan,* Del.Super., 320 A.2d 704, 708 (1974). All reasonable inferences must be drawn in favor of the non-moving party. *Sweetman v. Strescon Indus.,* Del.Super., 389 A.2d 1319, 1324 (1978). Summary judgment will not be granted if the record indicates that a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                 Page 3

Not Reported in A.2d, 1998 WL 281053
**(Cite as: Not Reported in A.2d)**

circumstances. *Ebersole v.. Lowengrub,* Del.Supr., 180 A.2d 467, 470 (1962). In this case, a decision on summary judgment appears to effectively determine this issue at the trial court level.

**\*2** The issue to be decided by this Court is whether Plaintiffs meet the conditions of the savings statute, thus giving them an absolute right to bring a new action asserting against the Administrator Defendant essentially the same claims as asserted in the original action. FN4

> FN4. Dismissal of the original suit on procedural grounds under Superior Court Civil Rule 4(j) was of course not the only available route. But the procedural bar, as found by the Court, was preclusive and therefore preempted arguments on the substantive points surrounding a suit commenced against a deceased person.

A threshold qualification under the savings statute is that the action must have been "duly commenced" within the statute of limitations of the particular action in order to make 10 *Del.C.* § 8118(a) applicable. *See O'Lear v. Strucker,* Del.Super., 209 A.2d 755, 758 (1965). Plaintiffs are relying on the " otherwise avoided" and "defeated by the death of any party" exceptions in the statute as a basis for their application of the savings statute. *See supra* footnote 2.

Defendant first argues that because Brian Davis was never served with process, he is not a party and thus the savings statute does not apply to save this action. As I indicated at oral argument, I am very hesitant to rule in any blanket fashion that the word "party" can only attach to one who has been formally joined. It seems to me that such a technical and metaphysical approach is what got the Court in trouble in *O'Lear,* a case which must be questioned as viable authority insofar as it holds that service must be perfected for an action to be duly commenced. Moreover, it is hard to foresee in what future context such a ruling may be argued as precedent.

In *Lemanski v. Jones,* Del.Super., C.A. No.

93C-07-140, Balick, J. (Apr. 25, 1994), like the case at bar, the Plaintiff filed an action against a deceased Defendant. The Court held that the action was duly commenced and the "death of any party" exception to the savings statute applied. *Id.* at 2. The Court rejected the Defendant's contention that an action filed against a deceased person is nullity. *Id.* (citing *Lockwood v. Lovinson,* Del.Supr., No. 332, 1987, Walsh J. (May 4, 1988) (ORDER). Although not specifically addressed, the Court's holding inherently demonstrates that, even though the originally named Defendant has died before the filing of the action and thus could not receive service of process, he is considered a "party" for the purposes of the "death of any party" exception to the savings statute. The decision was affirmed. *See Jones v. Lemanski,* Del.Supr., 653 A.2d 305 (1994).

The Defendant's argument that leaves the metaphysical sphere and addresses the fundamental merits of fair process is more impressive. The Defendant notes the pointed comment in the *Lockwood* decision: "We assume that at the time of the filing of the original Complaint, Lockwood was ignorant of, or not otherwise charged with knowledge of, Madigan's death." This comment becomes somewhat significant, the Defendant argues, because of this Court's findings in its opinion discussing the original suit. This Court said that "Plaintiffs' counsel was specifically aware of Mr. Davis' death in February 1996, more than eight months prior to the filing of the complaint."*See Ellis* at p. 4. The accompanying footnote is even more specific in its elaboration.

**\*3** Plaintiffs' counsel and the insurance adjuster had significant discussions of the viability of the claim, given the death of the insured, discussions that are documented in correspondence in 1996 prior to the filing of the complaint, wherein both Plaintiffs' counsel and the insurance company acknowledge Mr. Davis' death. The first such acknowledging letter from Plaintiff's counsel is dated February 20, 1996.... In this Court's opinion, Plaintiffs' counsel had actual knowledge of Mr. Davis' death in February 1996. Counsel seeks to avoid that conclusion because decedent's insurer never provided a death certificate until May 16, 1997.... But that confirmation was readily available to Plaintiffs' counsel and he

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A119

Not Reported in A.2d                                                                 Page 4

Not Reported in A.2d, 1998 WL 281053
**(Cite as: Not Reported in A.2d)**

cannot deny knowledge on that basis. It really does not matter because, even if Plaintiffs' counsel just should have known of the death, his constructive knowledge would lead to the same result. But this Court finds actual knowledge on these facts.

*Id.* at n. 3.

The Court, at oral argument, tried to pinpoint this argument by the following inquiry: Can a party *knowingly* bring an action against a deceased person and, after its dismissal, successfully bring a second action under the savings statute? The answer to the question put by the Court instinctively has to be "no. " But a rationale for the answer is more elusive.

Plaintiffs' counsel ("Counsel") argues that he did not have actual knowledge of the death of Mr. Davis, the original Defendant, at the time of the filing of the original action. Counsel further argues that even if he possessed actual knowledge of Mr. Davis' death before the filing of the original action, Plaintiffs could still properly bring a subsequent action under the savings statute. The Court will address these arguments in reverse order.

Plaintiffs' argument that knowledge of the death of a Defendant before filing an action does not bar a subsequent suit under the savings statute, clearly raises a threshold issue under the statute. In this Court's opinion, the Plaintiffs' argument fails.

An action knowingly brought against a deceased person simply cannot be "duly commenced." The word "duly" must mean more than "commenced within the time limited therefor in this chapter;" otherwise the word would be surplusage. Duly also means "properly" or "upon a proper foundation, as distinguished from mere form."*Black's Law Dictionary,* 4th Ed. (1951), p. 591 citing *Wellborn v. Whitney,* Okl.Supr., 190 Okla. 630, 126 P.2d 263, 266 (1942) and *Zeckiel v. Fireman's Fund Ins. Co.,* 7th Cir., 61 F.2d 27, 28 (1932). There are more recent cases using the same or similar general definitions of the word "duly" in various contexts. *See Cameron Equipment Corp. v. New York,* N.Y.Supr., 55 Misc.2d 645, 286 N.Y.S.2d 401, 403 (1968) ; *McGee v. Nat. Alliance of Federal and Postal Employees,* D D.C., C.A. No. 88-2742, 1988 WL 136956, at *3, Richey, J. (Dec. 12, 1988); *State of Tennessee v. Blazer,* Tenn.Supr., 619 S.W.2d 370, 371 (1981). The Court is satisfied that the phrase "duly commenced" in the context of 10 *Del.C.* § 8118(a) includes a substantive element that prevents one who has filed a lawsuit against a deceased person, with knowledge of the death, from taking advantage of the savings statute.

*4 Counsel argues secondly that he did not have actual knowledge of Mr. Davis' death before the filing of the original suit. As a result of the Court's request, Counsel has provided the Court with a supplemental letter dated April 17, 1998, in which he states:

[I]t is obvious that at the time defendant's insurer suggested that plaintiffs' claim was defeated in the event of defendant's death it was my belief that such a claim, at the time, was in the nature of a negotiating tactic. Given the fact that the insurance company thereafter abandoned any such suggestion; did not again raise such a claim or defense; never produced a death certificate or date of death; and never identified any estate it was my impression that there was no substance to the contention that Mr. Davis was deceased. It is also appropriate to note that other than the single conversation, which occurred on February 14, 1996 with defendant's insurer the insurer at no time thereafter ever contended that Mr. Davis was deceased and appeared to abandon the contention altogether. Given what appeared to be the abandonment of such a position and the subsequent negotiations including offers of settlement of the claim I did not consider the comment to be of truthful substance.

After nine months of negotiations between February and November 1996, failed to resolve the claim a lawsuit was initiated within the two (2) year statute of limitations. When preparing the lawsuit, my office did not bring to my attention, and I frankly did not recall, the single conversation raising the possibility of the death of the defendant. This was an unintentional oversight and one, which is deeply regretted.... Any reference to death or the potential for an estate being opened was made in the context of negotiations and appeared to be abandoned after

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                        Page 5

Not Reported in A.2d, 1998 WL 281053
**(Cite as: Not Reported in A.2d)**

February 1996.

As an officer of the Court, Counsel's representation concerning his lack of subjective knowledge of Mr. Davis' death prior to filing the original lawsuit is accepted by this Court as true. Nonetheless, the Court would be hard pressed to find that Counsel was not aware of the likelihood that Mr. Davis was deceased before Counsel filed his original suit. During a conversation on February 14, 1996, Andrea Miller, claims representative for Omaha Property & Casualty Insurance Company, told Counsel that Mr. Davis had passed away. *See Ellis v. Davis & Star Leasing Corp.,* C.A. No. 96C-11-035-WTQ, Affidavit of Andrea Miller, Ex. A ¶ 13 (Dkt. No. 17). Moreover, this conversation was referenced in a letter, written by Counsel, to Andrea Miller, dated February 20, 1996, wherein Counsel inquired whether the insurance adjuster was suggesting that Plaintiff's right to recovery expired along with the death of Mr. Davis. *See Ellis v. Davis & Star Leasing Corp.,* C.A. No. 96C-11-035-WTQ, Ex. 12, (Dkt. No. 16). Further in a letter addressed to Mr. Dean Schechinger dated April 1, 1996, Counsel states:

On February 14, 1996, I spoke with Ms. Miller. During that telephone conversation, she took the position that Omaha was not interested in discussing settlement for two reasons. *Firstly, because Omaha's insured had died in the interim, she was under the mistaken impression that Mr. Ellis could not proceed with a lawsuit against the Estate of your insured.*

***

*5 *The only condition that I placed upon such a settlement was that Ms. Miller review Delaware law and acknowledge that she was mistaken with regard to her impression as to whether Mr. Ellis could in fact institute a lawsuit against your insured's Estate.*

***

We expect, however, a good faith acknowledgment by your offices that *technical defenses such as the death of your insured are recognized not to be valid* and that there is interest in a good faith evaluation of Mr. Ellis' claim.

*Id.* at Ex. 14. These discussions should have at the very minimum created a substantial likelihood in Counsel's mind that Mr. Davis was deceased and thus placed a heavy duty on Counsel to confirm or dispel that strong suspicion prior to filing suit against Mr. Davis. It does not seem to me that this duty can be relieved simply because Counsel forgot the pertinent information when suit was filed against a deceased person.

The fact that Mr. Davis' insurer, in its ongoing negotiations with Counsel, did not further mention Mr. Davis' death does not relieve Counsel of his duty to investigate and confirm the information received. Pre-service contacts between the Plaintiff and the Defendant's insurer occur in a majority of cases and cannot, in this case, be relied upon as relieving Counsel of his affirmative obligations to verify the death of Mr. Davis.

Accordingly, Defendant's Motion for Summary Judgment is GRANTED. IT IS SO ORDERED.

Sincerely,

Del.Super.,1998.
Ellis v. Davis
Not Reported in A.2d, 1998 WL 281053

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d                                                                 Page 1

Not Reported in A.2d, 1996 WL 769331
**(Cite as: Not Reported in A.2d)**

**H**
Not Reported in A.2d, 1996 WL 769331
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
            Superior Court of Delaware.
            Caroline P. AYRES, Plaintiff,
                         v.
JACOBS & CRUMPLAR, P.A.; Robert Jacobs,
individually and as agent/senior partner; and
        Thomas C. Crumplar, individually and as
        agent/senior partner, Defendants.
            **No. 96C-07-258-WTQ.**

            Submitted: Nov. 6, 1996.
            Decided: Dec. 31, 1996.

Caroline P. Ayres, pro se, Wilmington, Delaware.
Thomas Stephen Neuberger , Thomas S. Neuberger,
P.A., Wilmington, Delaware, Attorney for
Defendants.

        *Defendants' Motion for Summary
    Judgment-GRANTED in part, DENIED without
                prejudice in part*

QUILLEN, J.
**\*1** The following is the Court's decision on
Defendants' Motion for Summary Judgment. For
the reasons herein stated, Defendants' Motion is
GRANTED in part and DENIED without prejudice
in part.

            *A. Facts*

This Court is the third court which thus far has had
occasion to touch upon the facts and allegations
pressed forth in this case. The facts and allegations
are not new, but the federal and state actions have
overlapped, so the Court will attempt to unravel this
tangled web. From the outset, it is clear that the
only undisputed facts concerning the substance of

the federal and state complaints are that Defendant
Jacobs & Crumplar, P.A. hired Plaintiff Caroline
Ayres ("Ayres"), an African-American woman, as
an associate in December 1988, and that she
worked for Jacobs & Cmmplar, P.A. until August
1993. The intervening factual allegations are made
by Ayres. According to Ayres, Robert Jacobs ("
Jacobs") and Thomas Crumplar ("Crumplar") at the
time of her hiring promised her that she would be "
promoted" from associate to partner in two or three
years, if her work has satisfactory. On at least two
occasions, in January 1991 and March 1992, Ayres
claims that Defendants Jacobs and Crumplar told
her that her work was satisfactory and qualified her
for partnership. It was not until January 1993,
however, that she says defendants told her that the
firm had decided to offer her membership as a
partner, but that the offer would be announced in
August 1993. Ayres says she accepted the
promotion at the January meeting. In July of that
same year, however, defendants held a meeting with
Ayres in which they told plaintiff that she would not
be promoted to partner and would instead be
discharged on the ground that she was incapable of
trying a case by herself.

On December 7, 1994, Ayres filed a *pro se*
complaint in the federal District Court for the
District of Delaware, in which she alleged a
veritable host of unlawful activity by Jacobs &
Crumplar, P.A., Robert Jacobs, Thomas Crumplar,
and Douglas Canfield, FN1 including racial and
gender discrimination, assault and battery,
retaliatory discharge, breach of implied covenant of
good faith and fair dealing, breaches of contract,
fraud in the inducement, economic duress,
malicious conspiracy, defamation, wrongful
termination, and the intentional and negligent
infliction of emotional distress. The District Court
issued a scheduling order on February 2, 1995.
Discovery was scheduled over seven months until
stayed by the District Court on September 19, 1995
in order to consider the motion to dismiss. Plaintiff
undertook little discovery, filing one set of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                          Page 2

Not Reported in A.2d, 1996 WL 769331
(Cite as: Not Reported in A.2d)

interrogatories which was later withdrawn. The federal case docket reveals that over this seven month period Ayres initiated no requests for documents, took no depositions, never obtained any experts, and never served any subpoenas for records. *See* Defendants' App. at A47-A56, Docket No. 6; Defendants' Mot. to Stay Disc. at 2, Docket No. 5. The District Court found, in describing the pace at which plaintiff pursued her cause of action, that she "stonewalled quite a bit in this case." *See* Tr. of Proceedings before Latchum, J., *reproduced in* Defendants' App. at A55, Docket No. 6.

*2 The District Court dismissed the complaint and entered judgment in favor of defendants on the ground of deficient service of process. Ayres had failed to obtain the District Court Clerk's signature on the summonses and have the seal of the court affixed, as required by Rule 4 of the Federal Rules of Civil Procedure. She claimed, instead, that " technical niceties of service of process" should be overlooked. *Ayres v. Jacobs & Crumplar, P.A.,* D. Del., CA. No. 94-658, Robinson, J., 1995 U.S. Dist. LEXIS 17712 at *4 (Nov. 25, 1995). The District Court found that Ayres failed to demonstrate good cause for her failure to comply with the federal rules, and, moreover, that "plaintiff has exhibited flagrant disregard for the rules." *Id.* at *11. Having received ample opportunity to correct her failure within the 120 day period as required by the federal rules, she did not do so. *Id.*

Ayres filed a timely appeal with the Third Circuit Court of Appeals. While a decision from the Third Circuit was pending, Ayres filed this action in Superior Court on July 25, 1996. Her state complaint dropped the gender discrimination charge and now numbers some fifteen counts, in roman numerals "I" through "XVII," skipping "VI" and " XII." A timely answer was filed by defendants. On August 26, 1996, defendants filed a Motion to Stay Discovery, which was granted by this Court on September 19, 1996 (Docket No. 9). They filed the present Motion on September 5, 1996. Before the scheduled date for oral arguments on this Motion, the Third Circuit Court of Appeals issued its decision on Ayres' appeal from the District Court's dismissal. *Ayres v. Jacobs & Crumplar, P.A.,* 3d Cir., 99 F.3d 565 (1996). In affirming the

District Court, the Circuit Court found that the District Court did not abuse its discretion in holding that there did not exist good cause for failure to effect service within the 120 day period. *Id.* at 658. The Circuit Court also found that the unsigned summons did not confer personal jurisdiction over the defendants, and that defendants did not waive the defective service. *Id.* at 570.

In the present Motion, defendants argue that all of the counts in plaintiff's Complaint may be dismissed. They assert that Counts I-V, VII, IX, X, XI, XVI, and XVII are personal injury claims and therefore barred by a two year statute of limitations, while Counts VII, VIII, XIII, XIV, and XV are contract-based claims and are barred by the Statute of Frauds and the at-will doctrine of employment. Plaintiff disputes that any of the counts should be dismissed.

### B. The Standard for Summary Judgment

When considering a motion for summary judgment under Superior Court Civil Rule 56, FN2 the Court's function is to examine the record to determine whether genuine issues of material fact exist. *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.,* Del.Super., 312 A.2d 322, 325 (1973). If, after viewing the record in a light most favorable to the non-moving party, the Court finds there are no genuine issues of material fact, summary judgment is appropriate. *Id.* The Court's decision must be based only on the record presented, including all pleadings, affidavits, depositions, admissions, and answers to interrogatories, not on what evidence is "potentially possible." *Rochester v. Katalan,* Del.Super., 320 A.2d 704 (1974). All reasonable inferences must be drawn in favor of the non-moving party. *Sweetman v. Stescon Indus.,* Del.Super., 389 A.2d 1319 (1978). Summary judgment will not be granted if the record indicates that a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances. *Ebersole v. Lowengrub,* Del.Super., 180 A.2d 467 (1962).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                      Page 3

Not Reported in A.2d, 1996 WL 769331
**(Cite as: Not Reported in A.2d)**

*C. Counts I-IV-Civil Rights Violations*

**\*3** The first four counts of the Complaint allege a variety of racially discriminatory acts by defendants, all of which culminate in plaintiffs invocation of 42 U.S.C. § 1981 as the jurisdictional basis for these counts. Section 1981 is one of the provisions within Title 42 that prohibits racial discrimination. In their Motion, defendants assert that, because the last wrongful act which allegedly occurred took place no later than August 30, 1993, the date of plaintiff's termination, Counts I-IV are time-barred because plaintiff failed to file her cause of action within the two-year statute of limitations for § 1981 claims.

In opposition, plaintiff raises three issues. Asserting there is no state precedent, plaintiff argues that this State's interpretation of the statute of limitations with regard to § 1981 claims need not be consistent with federal court interpretations. The second issue argued is that this State's statute of limitations for personal injuries is limited to injuries accompanied by force. The third is that the period of limitations in Delaware for breaches of employment contracts is three years. Arguing from these premises, plaintiff asserts that since she is seeking to recover for injuries resulting from a breach of contract, rather than an injury accompanied by force, the Court must apply Delaware's three year statute of limitations in order to be consistent with the State's intent to apply § 8119 only to personal injuries involving force.

There are several fatal errors in plaintiff's arguments. With regard to the first and third premises, it is true that § 1981 does not contain any express statute of limitations and that our state courts have apparently never ruled on the issue. It is equally true that the statute of limitations on actions for breach of contract are three years. See 10 *Del. C.* § 8106. In Delaware, however, the federal courts, consistent with the general trend, have determined that § 1981 claims are most closely analogous to suits for personal injuries and are therefore governed by the two-year statute of limitations on personal injury actions in 10 *Del. C.* § 8119. *See Cuffy v. Getty Ref & Mktg. Co.,* D. Del., 648 F.Supp. 802, 807 (1986). *See also*

*Goodman v. Lukens Steel Co.,* 482 U.S. 656, 660-62 (1987) (Pennsylvania); *Runyon v. McCrary,* 427 U.S. 160, 181-82 (1976) (Virginia); *Demery v. City of Youngstown,* 6th Cir., 818 F.2d 1257, 1260 (1987) (Ohio); *Ortiz v. Morgenthau,* S.D. N.Y., 772 F.Supp. 1430, 1432, *aff'd,* 962 F.2d 4 (1991) (New York); *Van Pool v. City and County of San Francisco,* N.D. Cal., 752 F.Supp. 915, 925, *aff'd,* 966 F.2d 503 (1990) (California).

Notwithstanding the holding of the federal District Court in Delaware, the state courts have not ruled on whether 10 *Del. C.* § 8119 's two-year statute of limitation applies to § 1981 claims. As the Court noted at oral argument, however, it would be " screwy" to have our state court interpret a statute of limitations for a *federal* statute differently than the federal court in our state. Delaware courts have followed the interpretation of the federal courts with regard to § 1983 and applied the statute of limitations applicable to personal injury actions. *Marker v. Talley,* Del.Supr., 502 A.2d 972, 975-76 (1985) ; *Vanaman v. Palmer,* Del.Super., 506 A.2d 190, 191 (1986). This is consistent with the United States Supreme Court's holding in *Wilson v. Garcia* that a single statute of limitations should govern all suits under § 1983, and that since claims under § 1983 are in essence claims for personal injuries, the state statutes of limitations applicable to personal injuries should control. 471 U.S. 261, 276-79 (1985).

**\*4** More importantly, the United States Supreme Court, in the *Goodman* decision cited above, expressly approved the extension of *Wilson's* § 1983 ruling to § 1981. In so holding, the high court rejected an argument by appellants identical to the one advanced by Ayres here.

[Appellant's] submission is that § 1981 deals primarily with economic rights, more specifically the execution and enforcement of contracts, and that the appropriate limitations period to borrow is the one applicable to suits for interereference with contractual rights, which in Pennsylvania was six years.

The Court of Appeals properly rejected this submission. Section 1981 has a much broader focus than contractual rights. The section speaks not only of personal rights to contract, but

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                          Page 4

Not Reported in A.2d, 1996 WL 769331
**(Cite as: Not Reported in A.2d)**

personal rights to sue, to testify, and to equal rights under all laws for the security of persons and property; and all persons are to be subject to like punishments, taxes, and burdens of every kind .... Insofar as it deals with contracts, it declares the personal right to make and enforce contracts, as a right, as the section has been construed, that may not be interfered with on racial grounds. The provision asserts, in effect, that competence, and capacity to contract shall not depend upon race. It is thus part of a federal law barring racial discrimination, which, as the Court of Appeals said, is a fundamental injury to the individual rights of a person.... *Wilson* 's characterization of § 1983 claims is thus equally appropriate here. That § 1981 has far-reaching economic consequences does not change this conclusion. *Goodman,* 482 U.S. at 661.

Although the United States Supreme Court and the District Court of Delaware have endorsed use of this jurisdiction: all personal injury suits have a two-year statute of limitations. *See also* Parts F to § 1981, plaintiff argues that our personal injury statute of limitations is inapplicable to this case because it is limited to personal injuries accompanied by force. Such an assertion ignores both the text of the statute and settled law in this jurisdiction. Title 10, Section 8119 of the Delaware Code states the following:

No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained....

This section covers *all* actions for the recovery of damages upon a claim for personal injuries, whatever the nature of the personal injury and " regardless of the theoretical basis underlying the requested remedy." *Johnson v. Hockessin Tractor, Inc.,* Del.Supr., 420 A.2d 154, 156 (1980). It is the plaintiff's "characterization of her injuries, rather than the nature of her underlying cause (or form of action) or its theoretical basis, [that] is controlling." *Cole v. Delaware League for Planned Parenthood,* Del.Supr., 530 A.2d 1119, 1123 (1987). *See also Patterson v. Vincent,* Del.Super., 61 A.2d 416, 418 (1948) (construing Rev.Code 1935, § 5133, the predecessor to 10 *Del. C.* § 8119). It is not limited to personal injuries caused in any particular manner.

*Natale v. Upjohn Co.,* 3d Cir., 356 F.2d 590, 590-91 n. 1 (1966). In fact, the cases Ayres cites in support of her argument address 10 *Del. C.* §§ 8106 and 8106A , which defined, in part, the statute of limitations in civil actions under the prior enactments of the Code, and which are now codified at Sections 8106 and 8107. *See Hood v. McConemy,* D. Del., 53 F.R.D. 435, 443-44 (1971) ; *Bradford Inc. v. Travelers Indem. Co.,* Del.Supr., 301 A.2d 519, 524 (1972). It is well-settled today that § 8119 's two-year limitation governs in all cases where recovery is sought for personal injuries, superseding § 8106's three-year limitation in cases which both could be deemed applicable. *Nationwide Ins. Co. v. Rothermel,* Del.Supr., 385 A.2d 691,693 (1978) ; *Heritage v. Board of Educ.,* D. Del., 447 F.Supp. 1240, 1242-43 (1978).

Plaintiffs argument in this regard, to the extent that it seeks to make use of either Section 8106 or 8107 of Title 10, ignores the plainly settled case law of this jurisdiction: all personal injury suits have a two-year statute of limitations. *See also* Parts F and G, *infra.*

*5 In light of the United States Supreme Court's apparent approval of applying personal injury limitation to § 1981 claims, of the jurisdiction, and of the two year federal District Court's application of the two year limitation of 10 <A HREF="http://www.westlaw.com/Find/Default.wl?rs

Westlaw.

542 A.2d 357                                                                    Page 1

542 A.2d 357, 1988 WL 46615
**(Cite as: 542 A.2d 357)**

**H**
542 A.2d 357, 1988 WL 46615
(The decision of the Court is referenced in the
Atlantic Reporter in a 'Table of Decisions Without
Published Opinions.')
Supreme Court of Delaware.
Charles LOCKWOOD, Plaintiff Below, Appellant,
v.
Laurence LEVINSON, Administrator of the Estate
of Ada E. Madigan, Defendant Below Appellee.
**No. 332, 1987.**

Submitted: Feb. 11, 1988.
Decided: May 4, 1988.

Superior Court, New Castle County.

AFFIRMED.

Before CHRISTIE, Chief Justice, and HORSEY
and WALSH, Justices.

*ORDER*

WALSH, Justice.
*1 This 4th day of May, 1988, it appears to the
Court that:

(1) The appellant, Charles Lockwood, appeals from
a Superior Court decision dismissing a personal
injury action brought against appellee, Laurence
Levinson, administrator of the estate of Ada E.
Madigan. The Superior Court determined that the
original action against Ada E. Madigan was of no
legal effect since she was deceased at the time the
lawsuit was filed, while the action against Levinson
was time-barred because the statute of limitations
for bringing the action against the administrator of
the estate had expired.

(2) The facts giving rise to this appeal are not in
dispute. On August 2, 1985, Lockwood filed a
complaint seeking damages against Ada E. Madigan

arising out of an automobile accident which
occurred on August 3, 1983. The Sheriff attempted
to serve Ms. Madigan on several occasions, but
since she had died nineteen months prior to the
filing of the action the original service was returned
"*mortus est* " on August 26, 1985. On December
29, 1986, following more than a year of inaction,
Lockwood filed a motion to amend the complaint
and a motion to permit an alias summons. The
motions were granted and Lockwood substituted
Levinson, the appointed administrator of the estate
of Ada E. Madigan, as a defendant. Lockwood
then effected service on Levinson under the alias
summons. On the same date Lockwood also
initiated a separate action against Levinson as the
administrator of the estate. The Madigan estate
had been closed since November 20, 1984.

(3) The two actions (85C-AU-11 and 86C-DE-178)
were ultimately consolidated. Levinson moved to
dismiss both actions as untimely filed. In granting
the motion to dismiss, the Superior Court ruled, as a
matter of law, that Lockwood's original suit was a
nullity and thus his second action was barred by the
statute of limitations. Lockwood contends that his
original complaint was filed within the two year
period of limitations for personal injury actions, *see*
10 *Del.C.* § 8119, and was duly commenced even
though service upon the named defendant could not
be effected. Furthermore, Lockwood contends that
his second action was not barred since it was filed
within one year of the abatement of the original
action, and thus was entitled to the benefit of the "
savings statute," 10 *Del.C.* § 8118, which provides:

If any action duly commenced within the time
limited therefore in this chapter, the writ fails of a
sufficient service or return by any unavoidable
accident, ... or the action otherwise avoided or
defeated by the death of any party thereto, ... a new
action may be commenced, for the same cause of
action, at any time within one year after the
abatement....

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A126

542 A.2d 357                                                                                                Page 2

542 A.2d 357, 1988 WL 46615
**(Cite as: 542 A.2d 357)**

(4) In dismissing the consolidated actions, the Superior Court concluded that the original suit filed against Madigan was a nullity because it was a suit filed against a dead person. Since the original suit was a nullity, the Court reasoned, it cannot be considered as having failed as a result of something occurring after the action was commenced. Thus the "savings statute" could not preserve the right to maintain a subsequent suit against Levinson in his capacity as administrator of the estate.

(5) While we agree with the judgment of the Superior Court, we do not fully accept its rationale. Specifically, we disagree with the Superior Court's conclusion that the original suit was a nullity because a lawsuit cannot be commenced against a dead person. We assume that at the time of the filing of the original complaint, Lockwood was ignorant of, or not otherwise charged with knowledge of, Madigan's death. We conclude, instead, that Lockwood's original action failed because he did not perfect service under an alias writ within the time required by Superior Court Civil Rule 4(a).

**\*2** (6) Superior Court Civil Rule 4(a) provides in relevant part that: "No alias or pluries writ shall issue except within 6 months after the return day of the preceding writ." In this case the Sheriff filed a return on the original summons with the Prothonotary on August 26, 1985, noting "*mortus est.*" This return served as notice to the plaintiff that the named defendant was deceased. *See* Woolley, *Delaware Practice,* § 202 (1906). Upon the failure of service under an original writ, a plaintiff is entitled to an alias writ as a matter of right. *Board of Adjustment of New Castle County v. Barone,* Del.Supr., 314 A.2d 174, 175 (1973). But the failure to secure an alias writ within the time specified under Superior Court Civil Rule 4(a) is fatal to the original action. *Id.* at 176. Lockwood failed to take any further action to complete service of process under an alias writ until December 29, 1986. His failure to do so caused the lapse of his original action, which could not thereafter be revised under the savings statute. Accordingly, both actions were subject to dismissal under an appropriate motion.

(7) The judgment of the Superior Court is AFFIRMED.

Del.,1988.
Lockwood v. Levinson
542 A.2d 357, 1988 WL 46615

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in A.2d                                                                                               Page 1

Not Reported in A.2d, 1989 WL 147472
**(Cite as: Not Reported in A.2d)**

C
Not Reported in A.2d, 1989 WL 147472
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware.
MOYER
v.
MARKEL, et al.
Submitted: Oct. 11, 1989.
Decided: Oct. 30, 1989.
Revised: Nov. 8, 1989.

Motion of Defendant Paul A. Markel to Dismiss.

Bayard Marin, Wilmington.
Dennis D. Ferri, Michael A. Pedicone, Dennis D.
Ferri, P.A., Wilmington.

HERLIHY, Judge.
*1 On March 10, 1984 a collision occurred between
vehicles driven by Walker Moyer [plaintiff] and
Paul Markel [defendant] in Wilmington, Delaware.
At the time of the accident and to date defendant
was a non-resident motorist as defined by 10 *Del.C.*
§ 3112. On March 6, 1986 a complaint was filed
against plaintiff for injuries allegedly
sustained in the March 10, 1984 accident. Pursuant
to 10 *Del.C.* § 3112(a) service of process was
directed to the Secretary of State on March 18,
1986 and returned on March 19, 1986. Notice to
defendant was not sent until April 21, 1987.
Subsequently, on April 6, 1988 the original action
was dismissed for failure of plaintiff to comply with
10 *Del.C.* § 3112(b) which requires that notice by
registered mail be sent to defendant within seven
days of the date of return. The Supreme Court
affirmed the granting of defendant's motion to
dismiss. *Moyer v. Markel*, Del.Supr., No. 164,
1988, Moore, J. (September 29, 1988) (ORDER).

On March 13, 1989 plaintiff filed the current action
alleging that the dismissal of the initial action

resulted in an abatement and, therefore, pursuant to
10 *Del.C.* § 8118, the second complaint is not
barred because it was filed within one year of the
dismissal of the original action. Presently before
the Court is defendant's motion to dismiss this
action.

Defendant claims that dismissal for failure to
properly comply with 10 *Del.C.* § 3112(b) is not an
abatement within the ambit of 10 *Del.C.* § 8118
and, therefore, this action is now barred by the
applicable statute of limitations. In response to the
motion, plaintiff filed a memorandum in opposition
in which in essence he claims that dismissal for
improper service is an abatement. Oral argument
on the issue was taken in chambers on October 12,
1989.

In *Giles v. Rodolico*, Del.Supr., 140 A.2d 263
(1958), the Delaware Supreme Court was faced
with a factual setting quite similar to that of the
instant case. In *Giles* the plaintiff, in contravention
of Superior Court Rule 4(a), failed to have an alias
writ issued within twenty days after the return of the
previous writ. The lower court, therefore,
dismissed the action but also granted leave to
commence a new action under 10 *Del.C.* § 8117
(the statutory predecessor to § 8118). *Id.* at 265.
While the court held that the dismissal was proper
and the granting of leave improper, the court went
on to consider if under these facts the plaintiff could
commence a new action pursuant to 10 *Del.C.* §
8117. *Id.* at 266-67. The Court after discussing
the history behind the statute found that in the
situation presented in *Giles,* the original action did,
in fact, "abate" within the meaning of 10 *Del.C.* §
8117. *Id.* at 267.

Likewise in *Goswell v. Whetsell,* Del.Supr., 198
A.2d 924 (1964), the Supreme Court was again
faced with the situation where the original action
was dismissed for lack of proper service of process
and subsequently the plaintiff filed a second action
within one year of the dismissal. The defendant in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A128

Not Reported in A.2d                                                                 Page 2

Not Reported in A.2d, 1989 WL 147472
**(Cite as: Not Reported in A.2d)**

*Goswell* moved to dismiss the complaint on grounds that the second action was barred by the statute of limitations. *Id.* at 925.

**\*2** After comparing the statute to similar laws from other states and the rules of pleading, the Supreme Court held that the first action abated as of the date of affirmance of the Superior Court's dismissal of the original action. *Id.* at 926-27.

It is important to note that the statute at issue is remedial in purpose and should be liberally construed versus a technical or rigid application. *Giles,* 140 A.2d at 267. Further, the forerunner of the current statute was construed to cover cases which did not specifically fall within the language of the statute. *Leavy v. Saunders,* Del.Super., 319 A.2d 44, 46, citing, *Bishop v. Wilds Admr.,* Del.Super., 1 Har. 87 (1832). In addition, it has been consistently recognized that,

The object of the statute is to mitigate against the harshness of the defense of statute of limitations where through no fault of his own a party finds his cause of action technically barred by lapse of time because a careless oversight of counsel would otherwise cause the party to be denied his day in Court.

*Leavy,* 319 A.2d at 46-47, citing *Giles,* 140 A.2d 263 and *Gosnell,* 198 A.2d 924.

In the instant case, the failure to properly comply with the requirements of 10 *Del.C.* § 3112 by plaintiff is a careless oversight by counsel. Equally clear is that dismissal of the first cause for failure to comply with 10 *Del.C.* § 3112(b) constitutes an abatement for the purposes of 10 *Del.C.* § 8118. *Viars v. Surbaugh,* Del.Super., 335 A.2d 285, 290 (1975). Therefore, under 10 *Del.C.* § 8118 the plaintiff has a right to bring a new action within one year of the affirmance of the dismissal of the original action. *Gosnell,* 198 A.2d 924; *Viars,* 335 A.2d at 290. The Supreme Court affirmed the dismissal of the original action on September 29, 1988 and on March 13, 1989 plaintiff filed this current action. This action is not barred by the applicable statute of limitations.

Based on the foregoing reasons, the motion of defendant Paul A. Markel to dismiss is hereby DENIED.

IT IS SO ORDERED.

Del.Super.,1989.
Moyer v. Markel
Not Reported in A.2d, 1989 WL 147472

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d                                                    Page 1

Not Reported in A.2d, 1988 WL 32002
**(Cite as: Not Reported in A.2d)**

C
Not Reported in A.2d, 1988 WL 32002
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware, New Castle County.
Marie TWYMAN and Arnold Twyman, her
husband, Plaintiffs,
v.
David RICE, Jr., Defendant.
March 14, 1988.

On Motion of Defendant to Dismiss on the Ground
of Statute of Limitations-Denied.

Carl Schnee, of Prickett, Jones, Elliott, Kristol &
Schnee, for plaintiffs.
F. Alton Tybout, and Sherry Ruggiero, of Tybout,
Redfearn, Casarino & Pell, for defendant.

*ORDER*

TAYLOR, Judge.
**\*1** This 14th day of March, 1988:

This suit was filed on October 14, 1987. It seeks
recovery for injuries received in an automobile
accident which occurred May 11, 1985.

Plaintiffs support their contention that this suit is
not barred by statute of limitations based upon
events which occurred in a prior suit asserting the
same cause of action which was timely filed in this
Court on April 21, 1983. Personal service was
attempted on defendant on April 25, 1983 and May
19, 1983, both of which efforts were unproductive.
On or about January 21, 1985, service was made on
the Secretary of State pursuant to 10 *Del.C.* §§ 3112
and 3113. However, the notice which plaintiffs
were required to send to defendant within seven
days after return of service upon the Secretary of
State, as required by 10 *Del.C.* § 3112(b), was not
sent and the affidavit of mailing was not filed as

required by that statute. Hence, service was not
effected under 10 *Del.Super.* §§ 3112 and 3113.
*Purnell v. Dodman,* Del.Super., 297 A.2d 391,
394-95 (1972). Accordingly, the Court granted
defendant's motion to dismiss. Plaintiffs' motion
for reargument was denied July 31, 1987. On
October 13, 1987 plaintiffs filed this suit.

Plaintiffs contend that this suit is entitled to the
protection of 10 *Del.C.* § 8118(a) which reads:

(a) If in any action duly commenced within the time
limited therefor in this chapter, the writ fails of a
sufficient service or return by any unavoidable
accident, or by any default or neglect of the officer
to whom it is committed; or if the writ is abated, or
the action otherwise avoided or defeated by the
death of any party thereto, or for any matter of
form; or if after a verdict for the plaintiff, the
judgment shall not be given for the plaintiff because
of some error appearing on the fact of the record
which vitiates the proceedings; or if a judgment for
the plaintiff is reversed on appeal or a writ of error;
a new action may be commenced, for the same
cause of action, at any time within one year after the
abatement or other determination of the original
action, or after the reversal of the judgment therein.

They contend that that statute affords them the
absolute right to proceed with a second suit since it
was filed within one year after abatement of the
prior action, citing *Gosnell v. Whetsel,* Del.Supr.,
198 A.2d 924 (1964) and *Giles v. Rodolico,*
Del.Supr., 140 A.2d 263 (1958). Alternatively,
plaintiffs contend that since defendant was
constructively on notice of the original suit
immediately following filing of the suit and within
the statute of limitations period by notice of filing
and forwarding of a copy of the complaint to
defendant's insurer, plaintiffs have satisfied any
equitable considerations which the Court might
have. It is undisputed that the initial suit was
brought within the statute of limitations and that the
suit was "abated" within the meaning of 10 *Del.C.* §

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                    Page 2

Not Reported in A.2d, 1988 WL 32002
**(Cite as: Not Reported in A.2d)**

8118(a).

Defendant contends that plaintiffs' new suit should be dismissed because plaintiffs did not pursue the suit diligently and because plaintiffs have not shown that defendant has not been prejudiced by plaintiffs' inaction.

**\*2** Defendant purports to rest its "pursue the suit diligently" argument on *Giles*, 140 A.2d at 263. *Giles*, after stating that the Court did "not intend to approve a practice which would make [§ 8118] a refuge for careless and negligent counsel", *Id.* at 267, and after finding that there was no legal excuse for plaintiff's failure to take timely action, permitted relief under § 8118 (formerly § 8117) on the ground that "it appears that no harm will result from the allowance of a second suit." *Id.* In the subsequent decision in *Gosnell*, 198 A.2d at 924, the Supreme Court went even further in rejecting the defense's opposition to a second suit, stating, "10 *Del.C.* [§ 8118(a) ] gives plaintiff an absolute right to bring [a second suit] if she is within the terms of the statute." The Court further stated that the law favors decision on the merits where "defendant has not been prejudiced since he was given prompt notice of plaintiff's intention to litigate." *Gosnell*, 198 A.2d at 927. Neither decision adopts the requirement that the suit be pursued diligently which defendant would have the Court impose. *Id.* at 924 ; *Giles*, 140 A.2d at 263.

Defendant's second contention is that plaintiff has failed to show that defendant has not been prejudiced by the delay. Prejudice is a factor which is properly considered in allowing relief under 10 *Del.C.* § 8118(a). *Id.*; *Leavy v. Sanders*, Del.Super., 319 A.2d 44, 48 (1984) ; *Howmet Corp. v. City of Wilmington*, Del.Super., 285 A.2d 423 (1971) ; *Gaspero v. Douglas*, Del.Super., C.A. No. 80C-DE-45, Christie, J. (November 6, 1981) (Letter Opinion); *Poplas v. Taylor*, Del.Super., C.A. No. 80C-JN-51, Taylor, J. (April 21, 1981) (Letter Opinion). In order to warrant relief under 10 *Del.C.* § 8118(a), the Court must determine that defendant has not been prejudiced by the events which followed the filing of the initial suit. In *Gosnell*, the Supreme Court found that prompt notice to defendant of plaintiff's intention to litigate

was sufficient to establish absence of prejudice. *Gosnell*, 198 A.2d at 927. This Court in *Gaspero*, extended the notice concept to include notice or contact with defendant's insurer. Letter op. at 4.

In this instance, plaintiffs' counsel filed an affidavit that his office had written to defendant's insurer four times in 1981, eight times in 1982, and three times in 1983, furnishing medical records, bills and periodic updates of plaintiff's condition; on the date of filing the complaint a copy of the complaint and notification that it had been filed was sent to the insurer. Applying the standard adopted by the Supreme Court and this Court, and in the absence of evidence of actual prejudice, I find that plaintiffs have established a proper basis for relief under 10 *Del.C.* § 8118(a). Accordingly, defendant's motion to dismiss is DENIED.

IT IS SO ORDERED.

Del.Super.,1988.
Twyman v. Rice
Not Reported in A.2d, 1988 WL 32002

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A131

Westlaw.

Not Reported in A.2d                                                           Page 1

Not Reported in A.2d, 1993 WL 133181
**(Cite as: Not Reported in A.2d)**

▷
Not Reported in A.2d, 1993 WL 133181
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Court of Chancery of Delaware.
PACIFIC INSURANCE CO.
v.
HIGGINS
ALLEN, Chancellor.
**Civ. A. No. 11284.**

April 15, 1993.

Phebe S. Young , Bayard, Handelman & Murdoch,
Wilmington.
Darryl K. Fountain, Wilmington.
Richard H. May , Young, Conaway, Stargatt &
Taylor, Wilmington.

**\*1** This declaratory judgment action was brought by
two professional liability insurers, seeking to
rescind legal malpractice insurance policies issued
to James E. Higgins, a Delaware attorney who has
been disbarred. Plaintiffs claim that in applying for
these policies Mr. Higgins misrepresented material
facts.

Defendants are Mr. Higgins, Richard H. May,
Esquire, the receiver of Mr. Higgins' law practice;
and certain persons who have asserted rights against
Higgins and his malpractice insurance carriers. In
September 1992 this court granted plaintiff's motion
for summary judgment with respect to their
requested declaration of non-liability to defendant
Ticor Title Insurance Company, but denied the
motion as to other defendants, finding that disputes
of material fact precluded summary adjudication at
that time. *See Pacific Insurance Company v.
Higgins,* Del.Ch., C.A. No. 11284, Allen, C. (Sept.
2, 1992).

The only defendant, other than Ticor Insurance,

who has appeared to litigate this suit is Mr. Epps.
Mr. Epps has filed an answer, counterclaim and a
cross-claim against Mr. Higgins. His answer
denies that plaintiffs were so misled in issuing their
insurance policies to Higgins as to give rise to a
right to rescind those insurance policies.
Affirmatively Epps charges that Higgins failed
properly to litigate two claims arising out of a
September 14, 1984 auto accident in which Mr.
Epps was injured. He thus seeks to recover money
from Higgins and his insurers, in this case.
Pending now is a motion *in limine* seeking rulings
on legal questions that the parties assert are relevant
to possible theories of recovery on certain
cross-claims between Mr. Epps and Mr. Higgins.

The following facts appear to be undisputed.
Higgins was an attorney. In September 1987 the
Supreme Court concluded that Mr. Higgins had
been neglecting his cases and, while it did not
suspend him, ordered him to obtain malpractice
insurance. Higgins did apply for and obtained
professional liability insurance from plaintiffs. In
doing so he allegedly failed to disclose his various
professional difficulties as called for by the
applications. *See Pacific Ins. Co. v. Higgins,*
Del.Ch., *supra.*

Finding continued violations of the Delaware
Lawyers Rules of Professional Conduct, the
Supreme Court suspended Mr. Higgins in 1989
from practice of law for one year. Shortly
thereafter a receiver was appointed by this court for
his practice, and it was discovered that Higgins had
diverted to his own use client funds which were
being held by him in escrow. On June 26, 1990
Higgins pleaded guilty in the Superior Court to
felony theft charges arising from his misapplication
of roughly $250,000.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A132

Not Reported in A.2d                                                                                  Page 2

Not Reported in A.2d, 1993 WL 133181
**(Cite as: Not Reported in A.2d)**

One of Higgins' clients had been Mr. Clemment Epps. On September 14, 1984, Epps had been injured in an automobile accident in which a Mr. Coates allegedly struck Epps' car from behind as it was stopped at a red light. The policy limit on Coates' insurance policy was $10,000. Epps retained Higgins and on September 15, 1986 Higgins filed a lawsuit against Coates alleging that Coates was responsible for severe personal injuries allegedly sustained by Epps in the accident. Higgins never properly served process upon Coates, however, and as a result, the limitations period for an action against Coates apparently expired in September 1986. On January 8, 1988 the complaint, was dismissed under Superior Court Rule 41. Epps alleges that the loss of this claim was caused by Higgins' negligence.

**\*2** In September 1986, Higgins also filed suit in Superior Court on behalf of Epps against Epps' own insurer, Allstate Insurance Company. Epps asserted an underinsured motorist claim against Allstate and claimed as well that Allstate had failed to offer uninsured/underinsured motorist coverage to Epps, as required by law. *See* Complaint C.A. No. 86C-SE-79 (Superior Court). Thus he sought to reform the Allstate policy to include an underinsured provision and to collect under it. Allstate conceded that it could not prove that it had offered underinsured coverage to Epps and therefore it voluntarily reformed Epps' policy to reflect uninsured/underinsured motorist coverage of $50,000, the same amount as his liability coverage.

Epps also alleged in the Complaint that he had " traditionally purchased large amounts of insurance coverage on his previous policies" and that he had intended to purchase $300,000 worth of liability coverage on the policy in force at the time of his accident. Epps sought to reform the Allstate contract to increase his liability insurance to $300,000. Since Allstate had conceded that Epps was entitled to uninsured/underinsured motorist coverage in the same amount as his liability coverage, the reformation sought would have increased his uninsured motorist coverage to $300,000 as well. *See* 18 Del.C. § 3902(b).

While the case against Allstate was pending, Epps

retained a new attorney to represent him. In 1991 Allstate moved for summary judgment which was denied. The claim was then settled for $20,000. Epps alleges that his recovery in the Allstate action was reduced as a result of Higgins' negligent handling of the lawsuit against Coates.

In this litigation Epps now seeks to recover from Higgins and from plaintiffs who assertedly are liable on their insurance contracts, FN1 the losses he claims he suffered by reason of Higgins' professional negligence in each of these two suits. This effort raises a host of legal and factual issues, including the question when did acts of negligence causing injury occur and whether plaintiffs are liable on claims of malpractice occurring then; whether Higgins was guilty of making material misrepresentations to plaintiff that, as between the two parties at least, give rise to a right to rescind the policy; and whether third parties (clients), who (presumably) relied upon the existence of professional liability insurance, have rights superior to Higgins that entitle them to enforce the terms of the insurance contract without regard to the misleading conduct of Higgins.

> FN1. In this action Epps asserts that the savings statute codified at Section 8118 of title 10 means that the 1988 dismissal by the Superior Court of the Coates' action was a key event in Higgins injury of him. 10 *Del.C.* § 8118 (1991). But for that statute it is arguably the case that the Coates' action was time-barred as of 1986, since Coates was never served. Under Epps' theory the action was not time-barred in (*e.g.*) 1987 because of the effect of Section 8118. This, I think, is a dubious proposition. That statute is aimed at correcting the effects of unavoidable accidents or official malfeasance or matters of form. Section 8118 is not directed to neglect of an attorney.

Assuming all of this is in Epps' favor, other issues arise relating to the amount of damages that he

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                          Page 3

Not Reported in A.2d, 1993 WL 133181
(Cite as: Not Reported in A.2d)

might collect from Higgins and his insurers. FN2

>    FN2. May, as Higgins' receiver has
>    essentially no assets in hand.

The parties, in the mutual hope that a pre-trial ruling will facilitate settlement negotiations, have now requested the court to provide rulings *in limine,* regarding the following three issues. *First,* I am asked to determine what rule of law would govern the measure of Epps' damages if he were able to prove that Higgins' negligence caused loss in the value of the claims against Coates and reduced the settlement he obtained in the Allstate action. *Second,* I am asked to decide as a question of law whether the Allstate uninsured/underinsured motorist policy, would have been reformed to reflect a $300,000 policy limit instead of a $50,000 limit, if Higgins had pursued the claim properly. *Finally,* I am asked to decide whether Higgins' alleged negligence caused Epps to receive a smaller settlement of his claim against Allstate than he would have received if Higgins had properly prosecuted the claim.

*3 I would like to assist the parties to reach a fair compromise of these claims by answering legal questions presented by the pleadings that are not dependent upon facts in material dispute. I am, however, limited in my ability to do so. For example, while I can answer the first question posed, I am in no position to determine now whether Mr. Higgins would have succeeded (or even would have had a reasonable prospect of succeeding) in having the Allstate policy reformed to reflect $300,000 in underinsured coverage. No dispositive point of law has been presented. The matter appears to be one of evidence.

The third question asked is more basic. If Epps, while well advised, accepted a settlement ($20,000) less than the Allstate policy limits (as reformed, $50,000), then the size of the policy limits might seem irrelevant. In answer to this Mr. Epps would say that Higgins' negligent failure to protect Epps' claim against the tortfeasor (Coates) proximately cause Epps to accept much less than policy limits in settlement of the Allstate claim. This argument is

premised on the view that if action against the tortfeasor was barred by limitation then the defense of an insurer on an underinsured motorist claim is much stronger. That is a question of fact premised on a question of law. If as a matter of law it is not true that a limitations bar against a tortfeasor is useful to an insurer in defense of an underinsured motorist action, then it is unlikely that such a bar would in fact decrease the value of such a claim materially.

In my opinion, the fact that an action against the tortfeasor is blocked by a statute of limitations defense does not, under 18 *Del.C.* § 3902(b)(3), or the language of this policy, provide to the carrier of underinsured motorist insurance a defense to its obligation to pay up to the amount stated in its policy.

While there is no controlling Delaware case the majority rule in other jurisdictions is that a claimant's inability to sue a tortfeasor because of the statute of limitations will not alone provide a valid defense to an insurer against whom an uninsured or underinsured motorist claim has been made. If that is the best reading of the Delaware law, then the negligence of Higgins in allowing the Coates claim to be time barred would have had little or no effect upon the outcome of litigation or the settlement value of the Allstate claim.

In the case of *De Luca v. Motor Vehicle Acc. Indem Corp.,* N.Y.Ct.App., 268 N.Y.S.2d 289 (1966), an insurer argued that since the statute of limitations had expired for any claims against the tortfeasor in an automobile accident, its insured's claim for coverage pursuant to an uninsured/underinsured motorist policy was also time-barred. The court held that the contract statute of limitations of six years governed the insured's claim instead of the two year tort statute of limitations.

The court stated that:
>    [t]he language in question-legally entitled to recover-simply means ... that, if the insured is to obtain an arbitral award against MVIAC, he must support his claim by proving those facts which he would have had to establish had he proceeded against the uninsured motorist, namely, (1) fault ...

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A134

Not Reported in A.2d                                                    Page 4

Not Reported in A.2d, 1993 WL 133181
**(Cite as: Not Reported in A.2d)**

and (2) damages. Indeed this court has already indicated that the phrase "legally entitled" means and denotes "fault". [citations omitted] *The provision was not designed to bar arbitration or prevent recovery from MVIAC merely because the tort-feasor, had he been sued at law, could have asserted the Statute of Limitations in defense.*
**\*4** *Id.* at 292-93.

The *De Luca* decision was followed by the court in *Murphy v. U.S. Fidelity & Guaranty Co.*, Ill.App., 458 N.E.2d 54 (1983), which rejected a similar claim that recovery on an underinsured motorist policy was governed by the same statute of limitations as recovery against the tortfeasor. The court stated:

we find persuasive the reasoning of the majority view that the phrase "legally entitled to recover" as used in the policy to denote a condition of the insured's right to recover from the insurer, was designed to indicate fault and not to bar recovery from the insurer merely because the tortfeasor, in an action against him by the insured, could have asserted a statute of limitations defense.

*Murphy,* at 57.

In *Barrfield v. Barrfield*, Okl.Supr., 742 P.2d 1107 (1987) an insurer sought to avoid a claim for underinsured motorist coverage on the grounds that no recovery in tort could be had against the tortfeasor because the accident occurred during the course of the insured's employment and was covered by a workmen's compensation statute. The court reversed a lower court decision denying coverage stating:

Protection under an uninsured motorist policy is a contractual right resting in the insured and thus may be co-existent with the protection under the Workers' Compensation Act. *An uninsured motorist carrier does not stand in the tortfeasor's shoes and the conditions for recovery under an uninsured motorist policy can be satisfied even if the insured cannot prove all the elements of the tort against the uninsured....* The term "legally entitled to recover" does not mean that an insured must be able to proceed against an uninsured/underinsured in tort to collect uninsured motorist benefits.

*Barrfield* at 1112. The *Barrfield* court cited *Uptegraft v. Home Ins. Co.*, Oil.Supr., 662 P.2d 681 (1983), in which the court considered an insurer's argument that the phrase "legally entitled to recover ":

requires every insured to establish all elements of a viable claim in tort [against the uninsured motorist] and that the timely filing of a suit [against the motorist] within a two year period of limitations is a *sine qua non* of recovery against the insurer.

*Id.* at 685. The court rejected this claim stating:

[w]e do not agree. The words "legally entitled to recover" simply mean that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to damages.... The phrase does not subject the insured's claim to the two year statute of limitations applicable to an action *ex delicto.*

*Id.* at 685.

While these cases construe statutory language that is somewhat different than that in the Delaware statute, Allstate in its Superior Court brief could cite no Delaware case holding that the need to exhaust the primary insurance created a condition precedent to action on an injured persons own underinsured coverage (for which the insured had paid a premium). Surely to hold that a limitations defense on an action against the tortfeasor itself barred any recovery against the insurer on its underinsured motorist obligation, would be to grant a windfall to insurers who provide, for a premium payment, this type of direct insurance to their customers. While the underinsured carrier may, where the insured fails to collect from a liable tortfeasor the amount of his "underinsurance," have a right to deduct the amount of the "underinsured policy" (here $10,000) from its obligation, (*cf. Aetna Casualty & Surety Co. v. Kenner,* Del.Supr., 570 A.2d 1172 (1990)) it has no legitimate economic interest beyond that in seeing that suit is in fact timely commenced against a liable third party.

**\*5** It is not insignificant here that Judge Taylor declined to grant Allstate's motion for summary judgment. The argument made by Allstate was weak and would ultimately have been rejected.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                    Page 5

Not Reported in A.2d, 1993 WL 133181
**(Cite as: Not Reported in A.2d)**

Thus I cannot conclude that Higgins' failure to litigate the Coates claim had a material impact upon the value of the Allstate case. Mr. Epps and his counsel may have evaluated things differently, but Higgins' malpractice does not make him an insurer of Mr. Epps' subsequent strategic choices. Thus, I cannot conclude that Higgins' negligence was a material factor in the acceptance of the Allstate settlement.

The parties also seek to resolve the issue, what rule will provide the measure of Epps' damages if he is successful in proving his claims against Higgins. They have framed the issue as essentially a choice between two alternatives, asking:

assuming Epps' is successful on his claims, whether his measure of damages will be: (1) that amount he can show by preponderance of the evidence *he would have actually received* had Higgins properly prosecuted the actions against Coates and Allstate or (2) the amount which he can show *a jury would have returned* as a verdict against Coates regardless of whether any resulting judgment could have been collected [from Coates or] Allstate.

In my opinion, assuming that there was professional malpractice that caused economic injury, a client is entitled to recover as damages an amount equal to the amount of which he or she was deprived as a result of the negligence. *Thompson v. D'Angelo,* Del.Super., 312 A.2d 639, 640 (1973) ; *Pusey v. Reed,* Del.Super., 258 A.2d 460 (1969). While one may find statements in reported cases in many jurisdictions that a client is entitled to recover from a malpracticing attorney that amount that a jury would have returned on her claim, such statements are partial and simply do not contemplate the risk of uncollectibility of judgments. But the recoverability of a judgment must be considered whenever there is ground to question it. An attorney is not an insurer of the solvency of her adversaries. Should lawyers malpractice they have an obligation to compensate their client for resulting injury, but not to protect clients from a risk of insolvency arising from the clients' transactions with others. This matter seems too clear to require

sustained discussion. Thus, in my opinion, Mr. Epps has the burden of showing what the lost claim was worth. Different methods may be employed to do this. If the attempt is to show what the jury would have awarded, the client will need to show as well that that amount or some part of it was collectible *as a practical matter.* See, *Taylor Oil Co. v. Weisenee,* S.D.Supr., 334 N.W.2d 27 (1983) ; *Pickens, Barnes & Abernathy v. Heasley,* Iowa Supr., 328 N.W.2d 524 (1983) , and cases cited at 90 A.L.R.4th at 1071-72; *cf. Chiaffi v. Wexler, Bergerman & Crucet,* N.Y.App., 497 N.Y.S.2d 703 (1986) (collectibility one element to consider).

*6 Finally I note that the Court of Chancery will not award punitive damages. Equity has long found the stronger claim to justice to reside in the principle of compensation for wrongs, rescission of transactions or disgorgements of ill-gotten profits. *See Beals v. Washington Internat'l, Inc.,* Del.Ch., 386 A.2d 1156 (1978) (the Court of Chancery has no jurisdiction to award punitive damages under Article IV section 10 of the Delaware Constitution); *see also William Whitman Co. v. Universal Oil Products,* D.Del., 125 F.Supp. 137, 162 (1954).

Del.Ch.,1993.
Pacific Ins. Co. v. Higgins
Not Reported in A.2d, 1993 WL 133181

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A136