IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KIMBRA CRISWELL, ) | |
| ) | |
| Plaintiff, ) | C.A. No. 05-CV-00321 GMS |
| v. ) | |
| ) | |
| LYDIA ADAIR MCFADDEN and CHRISTIANA ) | JURY TRIAL DEMANDED |
| CARE HEALTH SERVICES, INC., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

WHITE AND WILLIAMS LLP

         /s/  Deborah J. Massaro
JOHN D. BALAGUER (#2537)
DEBORAH J. MASSARO (#4280)
WILLIAM L. DOERLER (#3627)
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE 19899-0709
302-467-4526
*Attorneys for defendants Lydia A.
McFadden and Christiana Care
Health Services, Inc.*

Date: October 24, 2006

WILDMS 131657v.1

## Table of Contents

Page

TABLE OF CITATIONS ..................................................................................................ii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS....................1

SUMMARY OF ARGUMENT ..........................................................................................2

STATEMENT OF FACTS .................................................................................................3

ARGUMENT......................................................................................................................7

    I.  STANDARD FOR SUMMARY JUDGMENT .......................................................7

    II. BECAUSE PLAINTIFF WAS INJURED BY A FELLOW WORKER, HER SOLE REMEDY IS WORKER'S COMPENSATION .......................................................7

CONCLUSION.................................................................................................................14

### EXHIBITS

*Kappes v. E.I. DuPont De Nemours & Co., Inc.*, 1999 WL 166968 (D. Del.)..................A

*Walker v. Dunn*, 1986 WL 3637 (Del. Super. Ct.).............................................................B

*Horsey v. Contractual Carriers, Inc.*, 1988 WL 4741 (Del. Super. Ct.) ...........................C

# TABLE OF CITATIONS

## CASES

*Falconi v. Coombs & Combs, Inc.*, 902 A.2d 1094 (Del. 2006)..................................9, 12

*Fisher v. Townsends, Inc.*, 695 A.2d 53 (Del. 1997) ...............................................................9

*Groves v. Marvel*, 213 A.2d 853 (Del. 1965) ............................................................................8

*Horsey v. Contractual Carriers, Inc.*, 1988 WL. 4741 (Del. Super. Ct.) .........................12

*Kappes v. E.I. DuPont De Nemours & Co., Inc.*, 1999 WL. 166968 (D. Del.)................7

*Lester C. Newton Trucking Co. v. Neal*, 204 A.2d 393 (Del. 1964)..................................9

*Pastore v. Bell Tele. Co. of Pennsylvania*, 24 F.3d 508 (3d Cir. 1994)...........................7

*Porter v. Pathfinder Services, Inc.*, 683 A.2d 40 (Del. 1996) ...............................8, 9, 10

*Varrallo v. Hammond, Inc.*, 94 F.3d 842 (3d Cir. 1996) .....................................................7

*Walker v. Dunn*, 1986 WL. 3637 (Del. Super. Ct.)...........................................7, 8, 10, 11, 12

*Weiss v. Security Storage Co.*, 272 A.2d 111 (Del. Super. Ct. 1970)................................11

## STATUTES

19 *Del. C.* § 2304 ..............................................................................................................................7

10 *Del. C.* § 8118 ..............................................................................................................................1

## OTHER AUTHORITIES

Fed.R.Civ.P. 56(c) ...........................................................................................................................7

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

This case is a personal injury action. Kimbra Criswell (Plaintiff) contends that she was injured on or about May 23, 2002 when defendant McFadden negligently pushed a portable x-ray machine into Plaintiff. Initially, Plaintiff filed an action against Defendants in Pennsylvania. That suit was dismissed, and Plaintiff re-filed her suit in Delaware. On or about August 12, 2005, Defendants filed a Motion to Dismiss, contending that Plaintiff's claim was time-barred and that Delaware's Savings Statute, 10 *Del. C.* § 8118, did not apply to extend the Statute of Limitations. The Court denied Defendant's motion. Dkt. #16.

The parties have conducted discovery, which will be completed shortly. Defendants have filed a Motion for Summary Judgment. This is Defendants' brief in support of their motion.

WILDMS 131657v.1

## SUMMARY OF ARGUMENT

1. Although Aureus Medical Group was Plaintiff's general employer, at the time of the injury at issue she was a special employee of defendant Christiana Care Health Services, Inc. ("CCHS"). Plaintiff's status as a special employee is established by, *inter alia*, the level of control defendant CCHS had over Plaintiff. This factor is determinative of Plaintiff's status. Even if it was not, other factors, such as the fact that defendant CCHS supplied Plaintiff with x-ray equipment and had the right to hire and fire her, unequivocally establish that Plaintiff was a special employee of defendant CCHS. Plaintiff's conclusory statements regarding her status as an independent contractor do not raise a genuine issue of fact regarding her status. Because Plaintiff is a special employee of defendant CCHS, Plaintiff and Defendant McFadden are co-employees. Plaintiff's claims against Defendants, therefore, are barred by the exclusivity provisions of Delaware's Worker's Compensation Statute. Thus, the Court should grant summary judgment in Defendants' favor.

## STATEMENT OF FACTS

Plaintiff claims that she was injured while working at Christiana Hospital on May 23, 2002. She was assigned to work at Christiana Hospital by Aureus Medical Group (Aureus), a company for whom she worked as a traveling x-ray technician.[1] Plaintiff was placed at Christiana Hospital after defendant CCHS approved her selection. Pursuant to the contract between Aureus and defendant CCHS, defendant CCHS is solely responsible selecting healthcare professionals presented by Aureus.[2]

Plaintiff was assigned to work at Christiana Hospital approximately six weeks prior to May 23, 2002.[3] While Plaintiff worked at Christiana Hospital, the hospital provided her with an x-ray machine and all supplies that she needed to do her job.[4]

At the hospital, Plaintiff reported to Dawn Shutak, an employee of CCHS and the lead x-ray technician at the hospital.[5] Ms. Shutak was Plaintiff's only supervisor at Christiana Hospital.[6] Defendant McFadden was Plaintiff's co-worker.[7] Although Plaintiff worked for Aureus, she considered defendant McFadden a "fellow employee."[8]

---

[1] A9-11 (K.C. Tr. at 9-11). The phrase "K.C. Tr." refers to the deposition transcript of Plaintiff.

[2] *See* A90 (contract between Aureus and CCHS dated April 17, 2001, p.1, Provision of Healthcare Professionals, ¶ 3).

[3] A10-11 (K.C. Tr. at p.10-11).

[4] A12 (K.C. Tr. at 12).

[5] *Id.* at p.11. Although Plaintiff referred to Ms. Shutak as Ms. Spitnick at the deposition, she was not clear on the name. Ms. Shutak is the supervisor to which Plaintiff referred.

[6] A11 (K.C. Tr. at 11). *But see* A76-77 (K.C. Tr. at 76-77, where Plaintiff stated that no one at Christiana Hospital supervised her activities as an x-ray technician, and that Ms. Shutak's only supervision involved telling her where to report).

[7] A12-13 (K.C. Tr. at 12-13).

[8] A13-14 (K.C. Tr. at 13-14, Plaintiff's counsel's leading questions not withstanding).

3

Although Plaintiff did not sign a contract directly with Christiana Hospital,[9] Aureus did.[10] Pursuant to the contract, defendant Christiana Care Health Systems (CCHS) was charged an hourly rate of $50.88.[11] This rate included all payroll taxes, and Worker's Compensation benefits.[12] Aureus was responsible for issuing Plaintiff's paycheck and providing Worker's Compensation Insurance Coverage.[13]

Plaintiff's compensation from Aureus included a vehicle allowance, a per diem allowance, and her housing was paid for by Aureus.[14] These expenses, however, were billed to and paid for by CCHS.[15] Plaintiff received her paycheck from Aureus,[16] and twelve percent of her earnings went to a 401(k) plan sponsored by Aureus.[17] Plaintiff considered herself an independent contractor.[18]

Aureus' contract with defendant CCHS required Plaintiff to comply with all of defendant CCHS's rules, regulations and policies.[19] The contract, moreover, stated that defendant CCHS "shall be recognized as the on-site supervisor of professional performance and daily assignment responsibilities."[20] The contract further stated, in

---

[9] A78 (K.C. Tr. at 78).
[10] A90-94 (contract between Aureus and Christiana Care Health Systems).
[11] A89 (Apr. 15, 2002 proposal letter).
[12] Id.
[13] A91-92 (contract between Aureus and defendant CCHS, p.2, Legal, Payroll & Tax Obligations, ¶¶ 3-4)); Id. (contract at p.3, Insurance, ¶ 3).
[14] A74 (K.C. Tr. at 74).
[15] A89 (contract proposal letter dated April 15, 2002).
[16] A76 (K.C. Tr. at 76).
[17] A81 (K.C. Tr. at 81).
[18] A76 (K.C. Tr. at 76).
[19] A90 (contract at p.2, JCAHO Compliance, ¶ 3)
[20] Id. See A95-96 (affidavit of Maryellen Hofmann).

unambiguous terms, that all health care professionals supplied by Aureus and accepted by defendant CCHS **"shall, when rendering services, be under the direction and supervision of [defendant CCHS] and not Aureus."**[21] Under the contract, defendant CCHS was responsible for evaluating Plaintiff's competence, and was required to fill out formal evaluation forms for Plaintiff both after her initial on-site orientation, and at the end of the contract.[22] If defendant CCHS was unhappy with Plaintiff's performance, it had the authority to require Aureus to remove her.[23]

On the date of the incident at issue, Plaintiff and defendant McFadden were called to the operating room to do an x-ray using a portable machine.[24] After receiving the call, Plaintiff and Defendant McFadden walked down the hall to get the portable machine, which was parked in the hallway.[25] When they reached the machine, Defendant McFadden checked the controls, while Plaintiff went to unplug the machine.[26] At the time, Plaintiff and Defendant McFadden were having a conversation.[27] As the conversation finished, Plaintiff states that she walked in front of the machine to head down the hallway and as she took a step forward, the machine struck her left foot.[28] Plaintiff contends that she suffered personal injuries as a result of this incident.

---

[21] A91 (contract at p.2, Direction and Supervision). *See* A96 (affidavit of Maryellen Hofmann).

[22] A91 (contract p.2, JCAHO Compliance, ¶¶ 6-7).

[23] A92 (contract p.3, Billing and Payment, ¶4, stating that Plaintiff could be removed, for cause).

[24] A14-15 (K.C. Tr. at 14-15).

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

After the incident, Plaintiff reported to the hospital's Employee Health department for treatment.[29] She returned to the Employee Health department for follow-up care several days after the incident.[30] As a result of the incident, Plaintiff received worker's compensation benefits from Aureus.[31]

---

[29] A15 (K.C. Tr. at 15).

[30] A23 (K.C. Tr. at 23).  Plaintiff also used the hospital's Employee Health Department a week before the incident, when she injured her back.  A24 (K.C. Tr. at 24).

[31] A77 (K.C. Tr. at 77).

# ARGUMENT

## I. STANDARD FOR SUMMARY JUDGMENT

The Court should grant a motion for summary judgment where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[32] The moving party has the initial burden of establishing that no genuine issue of material fact exists.[33] Once the moving party has carried its burden, "the non-moving party cannot rely on conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact."[34] To defeat a motion for summary judgment that is properly supported by affidavit or deposition testimony, the nonmoving party must make a sufficient showing, based upon affidavits or by the use of depositions and admissions on file, to establish the existence of every element essential to his case.[35] Unsupported, conclusory assertions of fact, are cannot defeat a properly supported motion for summary judgment.[36]

## II. BECAUSE PLAINTIFF WAS INJURED BY A FELLOW WORKER, HER SOLE REMEDY IS WORKER'S COMPENSATION

In Delaware, the exclusive remedy for employees injured on the job by fellow employees is set forth in Delaware's Worker's Compensation statutes.[37] Pursuant to

---

[32] *Varrallo v. Hammond, Inc.*, 94 F.3d 842, 843 (3d Cir. 1996) (citing Fed.R.Civ.P. 56(c)).

[33] *Pastore v. Bell Tele. Co. of Pennsylvania*, 24 F.3d 508, 511 (3d Cir. 1994).

[34] *Id.*

[35] *Id.*

[36] See *Kappes v. E.I. DuPont De Nemours & Co., Inc.*, 1999 WL 166968 at *6, (D. Del.) (Exh. A) (holding that the plaintiff's unsupported assertion that he was "clearly qualified" was insufficient to defeat a motion for summary judgment).

[37] *Walker v. Dunn*, 1986 WL 3637 at *2 (Del. Super. Ct.) (Exh. B) (citing *Diamond State Telephone Co. v. Univ. of Delaware*, 269 A.2d 52 (Del. 1970)). See 19 *Del. C.*, § 2304

7

these statutes, an injured worker cannot bring suit against another employee of the same employer for damages for a condition which is compensable under the Worker's Compensation Law.[38] Consequently, if Plaintiff was a co-employee of defendant McFadden, she is barred from bringing suit against both Defendant McFadden and defendant CCHS by the Worker's Compensation Law.[39]

Although Plaintiff contends that she was an independent contractor, the only conclusion which can be drawn from the facts of this case is that at the time of the accident, Plaintiff was a special employee of defendant CCHS.[40] As such, Plaintiff and defendant McFadden were co-employees. Because Plaintiff, as a special employee, is barred from bringing suit against a co-employee, the Court should grant summary judgment in Defendants' favor.

Whether Plaintiff was a special employee of defendant CCHS is a question of law for the Court to decide.[41] The test for determining who an employee is involves an analysis of the following factors: a) who hired the worker; b) who had the power to discharge her; c) who paid her wages; and d) who was in control of the worker's

---

(stating that employers and employees are bound by the provisions of Title 19, Chapter 23 to pay and accept compensation for personal injuries arising out of and in the course of employment, regardless of the question of negligence, to the exclusion of all other rights and remedies).

[38] *Walker*, 1986 WL 3637 at *2 (citing *Groves v. Marvel*, 213 A.2d 853 (Del. 1965)).

[39] *Id.*

[40] A special employee is analogous to a borrowed servant. *Porter v. Pathfinder Services, Inc.*, 683 A.2d 40, 42 (Del. 1996).

[41] *Porter*, 683 A.2d at 42.

WILDMS 131657v.1

activities while she was working.[42] "The greatest weight is given to the issue of control."[43]

The facts in *Porter* are strikingly similar to those in the case *sub judice*. In *Porter*, Porter worked for a temporary agency, Casey, as an electrical technician. Casey furnished temporary employees to various employers, but was not engaged in the electrical contracting business.[44] On December 16, 1992, Casey sent Porter to work as an electrical technician at Pathfinder. He worked there until May 10, 1993, when he was injured in a motor vehicle accident. At the time, Porter was a passenger in a vehicle owned by Pathfinder, and driven by Sadler, an employee of Pathfinder. Sadler and Porter were returning to the Pathfinder shop for a safety meeting.[45]

During his assignment with Pathfinder, Porter worked only with Pathfinder employees and performed only electrical technician work. He was supervised by Pathfinder employees, who were solely responsible for the day-to-day supervision of his work, and he followed Pathfinder's policies.[46] Pathfinder provided Porter with all of the tools, equipment and materials he need to perform his work, and he could not leave work

---

[42] *Id.* (citations omitted). The test set forth in *Porter* was first adopted in *Lester C. Newton Trucking Co. v. Neal*, 204 A.2d 393, 395 (Del. 1964). This is the test that courts are to utilizes in cases involving two or more alleged employers. *Falconi v. Coombs & Combs, Inc.*, 902 A.2d 1094, 1100 (Del. 2006). In cases where the issue is whether the plaintiff is an employee or independent contractor of a single business, the ten factor test set forth in Restatement (Second) of Agency § 220, and discussed in *Fisher v. Townsends, Inc.*, 695 A.2d 53 (Del. 1997), is the applicable test. *Falconi*, 902 A.2d at 1100.

[43] *Porter*, 683 A.2d at 42.

[44] *Porter*, 683 A.2d at 41.

[45] *Id.*

[46] *Id.* at 41-42.

9

without Pathfinder's permission. Pathfinder, moreover, had the discretion to hire or fire Porter.

Under the agreement between Pathfinder and Casey, the hourly rate paid to Casey for Porter's services included a charge to cover worker's compensation insurance premiums for Porter. Porter received Worker's Compensation benefits from Casey as a result of the accident.[47]

On the facts presented in *Porter*, the Superior Court found that there was no material issue of fact "as to the determinative issue that Pathfinder alone exercised control over Porter's work at the time of his injury . . . ."[48] The Supreme Court affirmed this holding, stating that the Superior Court had correctly found that Porter was a "special employee" of Pathfinder as a matter of law.[49]

As is detailed in the statement of facts, in the case *sub judice*, Plaintiff, like Porter, worked for a temporary staffing agency. During her assignment, Plaintiff was supervised by defendant CCHS' employees,[50] she was required to comply with defendant CCHS' rules, regulations and policies,[51] and defendant CCHS provided her with all of the tools, equipment and materials needed to perform her work.[52]

---

[47] *Id.* at 41.

[48] *Porter*, 683 A.2d at 42.

[49] *Id.*

[50] *See* A95-96 (affidavit of Maryellen Hofmann); A90 (contract at p.2, JCAHO Compliance at ¶ 3); A91 (contract at p.2, Direction and Supervision).

[51] A91 (contract, p.2, JCAHA Compliance, ¶ 3).

[52] A12 (K.C. Tr. at 12); A95-96 (affidavit of Maryellen Hofmann).

In *Walker*, the court held that a truck owner who supplied the truck a purportedly independent truck driver used for a trip was the truck driver's employer for purposes of worker's compensation. Quoting from 1C Larson, *Workmen's Compensation Law* (1982), the court stated that "'[w]hen it is the employer who furnishes the equipment, the

Although Plaintiff, in conclusory fashion, contends that she was not supervised by employees of defendant CCHS, the agreement between defendant CCHS and Aureus unambiguously establishes that all professionals employed by Aureus "shall, when rendering services, be under the direction and supervision of the Client and not Aureus."[53] Further, the contract states that defendant CCHS "shall be recognized as the on-site supervisor of professional performance and daily assignment responsibilities."[54] Defendant CCHS was also responsible for evaluating Plaintiff's performance.[55]

Defendant CCHS also set Plaintiff's schedule, and told her where to report.[56] In addition, defendant CCHS, like defendant Casey in the *Porter* case, had the discretion to hire or fire Plaintiff.[57] Moreover, like in *Porter*, the charge for Plaintiff's services include a fee to cover worker's compensation premiums,[58] and Plaintiff received Worker's Compensation benefits from the insurance carrier retained by the temporary staffing agency.[59] In addition, Plaintiff reported to CCHS' employee health department when she was injured.[60]

---

inference of right of control is a matter of commons sense and business.'" *Walker*, 1986 WL 3637 at *3. When the employer furnishes valuable equipment, an employer-employee relationship is "almost invariably" that of employer-employee. *Id.* (quoting from *Weiss v. Security Storage Co.*, 272 A.2d 111 (Del. Super. Ct. 1970)).

[53]  A91 (contract at p.2, Direction and Supervision).

[54]  A91 (contract at p.2, JCAHO Compliance, ¶ 3).

[55]  A91 (contract p.2, JCAHO Compliance, ¶¶ 6-7).

[56]  A95-96 (affidavit of Maryellen Hofmann); A76-77 (K.C. Tr. at 76-77, wherein Plaintiff admits that Ms. Shutak told her where to report).

[57]  A90 (contract at p.1, Provision of Healthcare Professionals, ¶ 3 (hiring)); A91 (contract, at p. 3, Billing and Payment, ¶ 4 (firing)).

[58]  A89 (April 15, 2002 proposal letter).

[59]  A77 (K.C. Tr. at 77).

[60]  A23-24 (K.C. Tr. at 23-24).

11

Just as in *Porter*, there is no genuine material issue of fact as to the determinative issue that defendant CCHS alone exercised control over Plaintiff's work at the time of her injury. Because Plaintiff was a special employee of defendant CCHS as a matter of law, she cannot bring suit against either defendant McFadden[61] or defendant CCHS.

Although Plaintiff states that she believed that she was an independent contractor, Plaintiff's conclusory statement is not dispositive. Notwithstanding Plaintiff's stated belief, the evidence unequivocally establishes that Plaintiff submitted to defendant CCHS' control.[62] Aureus's contract with defendant CCHS required Plaintiff to work under the direction of defendant CCHS employees, and <u>not</u> Aureus. This control, which is given the most weight in the analysis, establishes that Plaintiff was defendant CCHS' employee.

Defendant CCHS moreover, contracted with defendant Aureus to provide Worker's Compensation benefits to Plaintiff, the cost of which was included in the rate charged to defendant CCHS for Plaintiff's services. Plaintiff received Worker's Compensation benefits paid for by defendant CCHS and defendant CCHS is entitled invoke the protection of the Worker's Compensation Statute to receive the benefit of its bargain.

---

[61] *Walker*, 213 A.2d at 855 (holding that the Workmen's Compensation Statute's exclusivity provisions immunizes both employers and co-employees from negligence suits for compensable injuries).

[62] *See Falconi*, 902 A.2d at 1102 (finding that a party's stated belief regarding independent contractor status is not outcome determinative where, notwithstanding that party's belief, the purported independent contractor submitted to the employer's control); *Horsey v. Contractual Carriers, Inc.*, 1988 WL 4741 at *2 (Del. Super. Ct.) (Exh. C) (finding that despite the fact that the claimant was told that he would be a contract carrier, and not an employee, the nature of the relationship between parties is determined from the facts of the relationship, and not the name given to the relationship in the contract).

13

Because Plaintiff's claims are barred by the exclusivity provisions in Delaware's Worker's Compensation Statute, the Court should enter summary judgment in Defendants' favor.

## CONCLUSION

Because Plaintiff was under defendant CCHS' control at the time of the incident, as evidenced by, *inter alia*, the fact that defendant CCHS provided the x-ray equipment used by Plaintiff, the facility for taking the x-rays, and defendant CCHS was responsible for setting Plaintiff's hours, her daily supervision, and had the right to terminate her services, Plaintiff was a special employee of defendant CCHS. Plaintiff and defendant McFadden, therefore, were co-employees at the time of the incident. Thus, Plaintiff is barred by the exclusivity provisions in Delaware's Worker's Compensation Statute from bringing suit against Defendants. The Court, therefore, should enter summary judgment in Defendants favor.

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

/s/ Deborah J. Massaro
JOHN D. BALAGUER (#2537)
DEBORAH J. MASSARO (#4280)
WILLIAM L. DOERLER (#3627)
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE 19899-0709
302-467-4526
*Attorneys for defendants Lydia A. McFadden and Christiana Care Health Services, Inc.*

Date: October 24, 2006

WILDMS 131657v.1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KIMBRA CRISWELL, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. 05-CV-00321 GMS |
| | ) |
| LYDIA ADAIR MCFADDEN and CHRISTIANA | ) JURY TRIAL DEMANDED |
| CARE HEALTH SERVICES, INC., | ) |
| | ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I, Deborah J. Massaro, Esquire, do hereby certify that on this 24th day of October, two copies of **DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** were served via electronic filing and delivered U.S. First Class Mail, postage prepaid upon the following:

Richard R. Wier, Jr., Esquire  
Law Offices of Richard R. Wier, Jr., P.A.  
Two Mill Road  
Suite 200  
Wilmington, DE 19806

Nelson Levin, Esquire  
Kats, Jamison, Van Der Veen & Associates  
25 Bustleton Pike  
Feasterville, PA 17044

WHITE AND WILLIAMS LLP

/s/ Deborah J. Massaro  
JOHN D. BALAGUER (#2537)  
DEBORAH J. MASSARO (#4280)  
WILLIAM L. DOERLER (#3627)  
824 N. Market Street, Suite 902  
P.O. Box 709  
Wilmington, DE 19899-0709  
302-467-4526  
*Attorneys for defendants Lydia A. McFadden and Christiana Care Health Services, Inc.*

WILDMS 131657v.1