BY MR. LEVIN:

Q. A couple questions. Kim, to clarify a few things, at the time of this incident, you were employed by Aureus?

A. Yes.

Q. You received a paycheck from Aureus?

A. Yes.

Q. And you were an independent contractor?

A. Yes.

Q. Did anyone at Christiana Hospital supervise your activities as an x-ray technician?

A. No.

Q. Did anyone at Christiana Hospital train you how to operate an x-ray machine?

A. No.

Q. Did anyone at Christiana Hospital train you in how to deal with patients in administering x-rays?

A. No.

Q. Were you given any protocols or procedures in the administration of x-rays by Christiana Hospital?

A. No.

Q. This individual, Dawn Spitnik, did she supervise your x-ray technician activities at Christiana Hospital?



```
 1      A.   No, she was just a dispatcher and told me where
 2  I was needed that day.
 3      Q.   And that's all that she did in connection with
 4  your activities in Christiana Hospital; is that
 5  correct?
 6      A.   Yes.
 7      Q.   And you had been working as an independent
 8  contractor with Aureus prior to Christiana Hospital.
 9  Is that correct?
10      A.   Yes.
11      Q.   And the worker's compensation that you were
12  receiving, that is through Aureus?
13      A.   Yes.
14      Q.   And Wausau Insurance Company, the comp
15  provider, is Aureus's comp carrier.  Is that correct?
16      A.   Yes.
17      Q.   And to be clear, Lydia Adair, to your
18  knowledge, is an employee of Christiana Hospital,
19  correct?
20      A.   Yes.
21      Q.   You indicated that now you're working three
22  days a week, and there is a day in between during the
23  week that you are resting.  Is that correct?
24      A.   Yes.
```



```
 1      Q.    And why do you require that day in between of
 2   rest?
 3      A.    The pain and swelling.  There's no way I can do
 4   two long days back to back.
 5      Q.    I see.  Now, prior to this accident, you were
 6   working 40 hours a week?
 7      A.    Yes.
 8      Q.    Are you able to work 40 hours a week now as an
 9   x-ray technician?
10      A.    No.
11      Q.    Why is that?
12      A.    Because I'm required to be on my feet, and the
13   pain and swelling is too much.
14      Q.    I see.  And is your understanding that this
15   will be a permanent part of your life?
16      A.    Yes.
17      Q.    Did you receive a paycheck directly from Aureus
18   or was it direct deposit?
19      A.    It was direct deposit.  I received a stub in
20   the mail.
21      Q.    And you never signed any contracts with
22   Christiana Hospital.  Is that correct?
23      A.    No.
24      Q.    Yes, that is correct?
```



Kimbra Criswell                                                    79

1   A.   Yes, that is correct.
2   Q.   And since this accident, am I correct that you
3   have not returned to full-time employment as an x-ray
4   technician?
5   A.   Correct.
6   Q.   At some part of your testimony you indicated
7   that you were looking for a job in one of the
8   locations you were living but could not find
9   employment.  Do you recall that?
10  A.   Yes.
11  Q.   And is that because you could not find
12  employment part time?
13  A.   Yes, with the hour stipulations, the four hours
14  a day part time.
15  Q.   And those four hours a day, was that limitation
16  prescribed to you by a physician?
17  A.   Yes.
18  Q.   And which physician said to you you could only
19  work four hours a day as an x-ray technician?
20  A.   Dr. Bellis.
21  Q.   And in connection with what injury you
22  sustained in this accident limits you from working
23  four hours a day?
24  A.   The pain and the swelling from the RSD that



1  I'll have for the rest of my life.
2      Q.   Incidentally, prior to this incident, had you
3  ever injured your left leg before?
4      A.   No.
5      Q.   During your testimony there was a discussion
6  that after the incident you had stepped off a curb and
7  fractured your fourth metatarsal.
8      A.   Yes.
9      Q.   That's your toe next to your pinky toe; is that
10 right?
11     A.   Yes.
12     Q.   And what is your understanding of how that
13 metatarsal was fractured?
14     A.   From the osteopenia, it's a form of
15 osteoporosis where the bones are weak.  The RSD causes
16 that.
17     Q.   While you were working on behalf of Aureus, in
18 connection with your answer to interrogatories, it
19 says that your housing was fully furnished and paid
20 for by Aureus?
21     A.   Yes.
22     Q.   Your phone and cable were paid for by Aureus?
23     A.   I was reimbursed for that through Aureus.
24     Q.   I see.  And 12 percent of your earnings went



```
 1    into a 401(k)?
 2       A.   Yes.
 3       Q.   And that was offered to you by your employer,
 4    Aureus?
 5       A.   Yes, and they matched it.
 6       Q.   And they matched it.  And also you got a dental
 7    plan with Aureus?
 8       A.   Yes.
 9       Q.   And health insurance as well?
10       A.   Correct.
11       Q.   Currently in the radiology facility you work at
12    in Arizona, are you receiving these benefits?
13       A.   No.
14       Q.   Is it your understanding that you'll ever be
15    able to return to full-time employment as an x-ray
16    technician?
17       A.   Can you repeat that, please?
18       Q.   Certainly.  It was poorly phrased.
19            As far as you know, will you ever be able
20    to return to full-time employment as an x-ray
21    technician?
22       A.   No.
23       Q.   What's that?
24       A.   No.
```



1          MR. LEVIN: No further questions.
2    BY MS. MASSARO:
3       Q.  I just have one quick follow-up. Has a doctor
4    ever told you that you will not be able to return full
5    time as an x-ray technician --
6       A.  Yes.
7       Q.  -- to work? And who was that?
8       A.  Dr. Bellis.
9       Q.  Okay.
10      A.  Dr. Duwanjee.
11      Q.  Duwanjee.
12      A.  Um-hum.
13          MS. MASSARO: Okay, I have no other
14   questions. Thank you.
15          MR. LEVIN: No follow-up questions.
16          I'll ask you. You have an opportunity to
17   read and sign the deposition, would you like to do
18   that? This is off the record.
19          (Discussion held off the record.)
20          (Reading and signature were waived.)
21
22
23
24

```
1                        I N D E X

2    Deponent:  KIMBRA CRISWELL                          Page

3    By Ms. Massaro...................................    2

4    By Mr. Levin.....................................   76

5    By Ms. Massaro...................................   82

6                       E X H I B I T S

7    Criswell:                                           Page

8    1       Photocopy of Two Photographs                 17

9    2       Photocopy of Photograph                       19

10   3       Photocopy of Five Photographs                21

11   4       Photocopy of Photograph                       62

12   5       "Pg. 2 of 3, New Model - GE - CT Portable    62

13           X-rays AMS-4+"

14                           - - - - -
```

```
1                          CERTIFICATE

2    STATE OF DELAWARE)
                      )
3    NEW CASTLE COUNTY)

4                     CERTIFICATE OF REPORTER

5           I, Julie H. Parrack, Registered Professional
     Reporter and Notary Public, do hereby certify that
6    there came before me on the 14th day of July, 2006,
     the deponent herein, KIMBRA CRISWELL, who was duly
7    sworn by me and thereafter examined by counsel for the
     respective parties; that the questions asked of said
8    deponent and the answers given were taken down by me
     in Stenotype notes and thereafter transcribed by use
9    of computer-aided transcription and computer printer
     under my direction.
10
            I further certify that the foregoing is a true
11   and correct transcript of the testimony given at said
     examination of said witness.
12
            I further certify that I am not counsel,
13   attorney, or relative of either party, or otherwise
     interested in the event of this suit.
14
                              [signature]
15                          _____
                            Julie H. Parrack, RMR, CRR
16                          Certification No. 102-RPR
                            (Expires January 31, 2008)
17

18   DATED: July 24, 2006
19

20

21

22

23

24
```







bracket on other side of wheel

A000085






where machine hit heel





DEPOSITION EXHIBIT
Criswell 5
7/14/06

### The image quality of a stationary system

With the AMX-4+, there's no need to choose between patient comfort and quality of exam results. Capabilities such as these deliver the same level of image quality typically only achievable with stationary systems:



- Its wide range facilitates even difficult lateral-hip and spine studies.
- Digital microprocessor control delivers extremely accurate and consistent technique output from exposure to exposure, regardless of battery charge.
- Excellent generator-output accuracy and reproducibility translate into excellent results the first time.
- Closed-loop feedback regulates kVp throughout exposures, eliminating the voltage fluctuations traditionally associated with mobile units.

### Extraordinary reliability and durability

The AMX-4+ is designed for nonstop performance in even the most taxing "bump and run" environments. Features include:

- Maintenance-free, rechargeable lead/acid batter produces up to 50 exposures on a single charge.

A000088

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KIMBRA CRISWELL, | ) C.A. No. 05-CV-00321 GMS |
| | ) |
| Plaintiff, | ) |
| v. | ) JURY TRIAL DEMANDED |
| | ) |
| LYDIA ADAIR MCFADDEN and CHRISTIANA | ) |
| CARE HEALTH SERVICES, INC., | ) |
| | ) |
| Defendants. | ) |

## AFFIDAVIT

STATE OF _DELAWARE_ :
: SS.
COUNTY OF _NEW CASTLE_ :

**BE IT REMEMBERED** that on this _13th_ day of _OCTOBER_, 2006, personally came before me, the Subscriber, a Notary Public for the State and County aforesaid, Maryellen Hofmann (deponent), who, being duly sworn according to law did say that:

a) he/she is employed by Christiana Care Health Services, Inc. as a Radiology Section Supervisor;

b) he/she is authorized to make this affidavit on behalf of Christiana Care Health Services, Inc.;

c) the facts set forth in this affidavit are based upon personal knowledge;

d) he/she is over eighteen years of age;

e) in May of 2002, including on May 23, 2002, I was employed by Christiana Care Health Services, Inc. (CCHS) as a Radiology Section Supervisor.

f) I am familiar with the terms of the agreement between CCHS and Aureus dated April 17, 2001, related to the services of Plaintiff.

g) as part of my duties in May of 2002, I was responsible for establishing Plaintiff's work schedule, telling her where to report, and supervising and directing her work at CCHS;

h) CCHS provided Plaintiff with x-ray equipment for use at CCHS, and maintained control over the use of the equipment at all times.

*Maryellen Hofmann*
Maryellen Hofmann
Radiology Section Supervisor

SWORN AND SUBSCRIBED before me this 13th, of OCTOBER, 2006.

*Jason M. Townsend*
NOTARY PUBLIC
commission expires 10/2/2007