IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KIMBRA CRISWELL | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 05-00321 GMS |
| LYDIA ADAIR MCFADDEN | : | JURY TRIAL DEMANDED |
|     and | : | |
| CHRISTIANA CARE HEALTH | : | |
| SERVICES, INC., | : | |
|     Defendants. | : | |

## PLAINTIFF KIMBRA CRISWELL'S ANSWER TO DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

_____
Richard R. Wier, Jr., (#716)
Richard R. Wier, Jr. P.A.
Two Mill Road, Suite 200
Wilmington, DE 19806

OF COUNSEL:
Nelson Levin, Esq.
Kats, Jamison, van der Veen & Associates
25 Bustleton Pike
Feasterville, PA 19053

Date: December 11, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................iii

NATURE AND STAGE OF THE PROCEEDING ...............................................1

SUMMARY OF ARGUMENT ..............................................................................2

STATEMENT OF FACTS......................................................................................4

ARGUMENT ..........................................................................................................6

    I.    BECAUSE PLAINTIFF WAS NOT AN EMPLOYEE OF CCHS, SHE IS NOT BARRED FROM BRINGING SUIT AGAINST DEFENDANTS………………………………………………………..6

        A. AUREUS HIRED THE PLAINTIFF……………………………...7

        B. AUREUS HAD THE POWER TO FIRE THE PLAINTIFF ……….7

        C. AUREUS PAID THE PLAINTIFF …………………...…………..8

        D. CCHS DID NOT CONTROL THE PLAINTIFF'S ACTIVITIES………9

CONCLUSION ....................................................................................................12

# TABLE OF AUTHORITIES

**CASES**

Falconi v. Combs & Combs, Inc., 902 A2d. 1094 (Del. 2006).................................................11

Kappes v. E.I. DuPont De Nemours & Co., 1999 U.S. Dist. LEXIS 3580, 10-11
(D. Del. 1999)................................................................................................................6

Lester C. Newton Trucking Company v. Neal, 204 A2d. 393 (Del. 1964) ..............................9

Porter v. Pathfinder Services, Inc., 683 A2d. 40 (Del. 1996) ........................................6, 9, 10

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff adopts Defendants' Statement of the Nature and Stage of the Proceedings contained in their brief.

## SUMMARY OF ARGUMENT

Plaintiff was not an employee of Christiana Care Health Services, Inc. (hereinafter "CCHS"). Plaintiff was an employee of Aureus. Plaintiff was hired by Aureus. At the time of her injury, Plaintiff Kimbra Criswell was employed by Aureus Medical Group (hereinafter "Aureus"). Aureus is an employment service placing experienced medical personnel in hospitals. When Plaintiff was placed at CCHS, she was under an employment contract with Aureus. Plaintiff never signed an employment contract with CCHS. Aureus hired Plaintiff in 2001, 19 months before the accident, to be a full-time traveling X-ray technician. Plaintiff was performing her X-ray technician duties at Christiana Hospital, owned and operated by CCHS, as an independent contractor, pursuant to a contract between Aureus and CCHS.

Plaintiff was paid by Aureus, not CCHS. Plaintiff received paychecks directly deposited from Aureus. While Plaintiff was working for Aureus, Aureus paid for her fully-furnished housing. Aureus paid for her phone and cable. Aureus offered Plaintiff a 401K and matched it. Aureus provided Plaintiff's health insurance and dental plan. Aureus provided Plaintiff with Workers' Compensation insurance. Aureus, pursuant to the contract between Aureus and CCHS, was responsible for paying Plaintiff's wages, including withholding all applicable income and Social Security taxes and state and Federal unemployment insurance taxes. Aureus maintained all payroll and personnel records.

CCHS exercised no control over Plaintiff's activities at the hospital. Plaintiff's activities as an X-ray technician were to operate the x-ray machines, develop the films, move the x-ray machines, if portable, and speak with the patients. Plaintiff performed those activities completely independently without any supervision by CCHS staff. CCHS'

only role was to post Plaintiff's weekly schedule. CCHS admits that Plaintiff was qualified to operate x-ray machines without supervision.

CCHS did not have the unilateral right to fire Plaintiff. If an Aureus employee was not performing satisfactorily, CCHS would contact Aureus to address the problem, and Aureus could place Plaintiff at another hospital.

Because Plaintiff was not an employee of CCHS, Plaintiff's claim against Defendant is not barred by the exclusivity provision of Delaware's Workers' Compensation Statute. Thus, the Court should deny Summary Judgment.

## **STATEMENT OF FACTS**

Plaintiff Kimbra Criwell was injured while working at Christiana Hospital on May 23, 2002. At that time, Lydia McFadden, a CCHS employee, pushed an x-ray machine in the back of Plaintiff's left leg, causing serious injury. K.C. Tr. at 14. At this time, Plaintiff was assigned to work at Christiana Hospital by Aureus Medical Group ("Aureus"). In 2001, Aureus hired Plaintiff to work as a traveling x-ray technician. Plaintiff had worked for Aureus in locations across the country before coming to CCHS. K.C. Tr. at 8-10. At the time of the incident, Plaintiff received a paycheck directly deposited from Aureus. K.C. Tr. at 78. Plaintiff never signed any contracts with Christiana Hospital. K.C. Tr. at 78. While Plaintiff was working on behalf of Aureus, her housing was fully furnished and paid for by Aureus. K.C. Tr. at 80. Plaintiff's phone and cable were paid for by Aureus. K.C. Tr. at 80. Twelve (12%) percent of her earnings went into a 401K that was offered to Plaintiff by Aureus and Aureus matched it. K.C. Tr. at 80-81. Aureus provided Plaintiff's health insurance and dental plan. Aureus provided Plaintiff with Workers' Compensation insurance. K.C. Tr. at 77. Aureus, pursuant to a contract between Aureus and CCHS, was responsible for paying Plaintiff's wages, including withholding all applicable income and Social Security taxes and state and Federal unemployment insurance taxes. Aureus maintained all payroll and personnel records. See Defendant's Appendix at A91.

At the time of the incident, Aureus placed x-ray technicians at CCHS pursuant to a contract between CCHS and Aureus. See deposition of Dawn Shutak at P. 19, (hereinafter "D.S. Tr."). At the time CCHS contracted with Aureus, Kimbra Criswell was working for Aureus. D.S. Tr. at 20. Ms. Shutak had no authority to fire Plaintiff. D.S. Tr. at 27. If there was a problem with an Aureus technician, CCHS employee, Maryellen Hoffman,

4

a section supervisor, would call Aureus recruiter, Ray Petty. Aureus could remove the X-ray Technician and place the technician with another hospital. D.S. Tr. at 36-37.

Dawn Shutak was a CCHS employee in the Radiology Department. Ms. Shutak's only role, *vis-a-vie* Kimbra Criswell, was to post her schedule. D.S. Tr. at 30. Ms. Shutak does not recall reviewing any protocols with Plaintiff nor did Ms. Shutak ever do a written evaluation of Plaintiff. D.S. Tr. at 27. **Before the incident, Ms. Shutak believed Plaintiff was qualified to operate the x-ray machinery on her own without her supervision.** D.S. Tr. at 28. Plaintiff's duties were as follows: take the x-ray, develop the x-ray film, move the x-ray machine, if portable, and speak to the patient. The X-ray technician performs these duties on her own. D.S. Tr. at 44-45. Dawn Shutak would not tell Plaintiff how to speak to a patient before taking an x-ray, how to place the leather bib on the patient, how to develop the x-rays, how to move the equipment from room to room. D.S. Tr. at 50-52.

According to Plaintiff, no one at CCHS supervised her activities as an X-ray technician; no one at CCHS trained her how to operate an x-ray machine; no one at CCHS trained her how to deal with patients in administering x-rays nor was she given any protocols or procedures in the administration of x-rays by Christiana Hospital. K.C. Tr. at 76. According to Plaintiff, Dawn Spitnik (sic) did not supervise her x-ray technician activities, but was just a dispatcher. K.C. Tr. at 76-77.

Accordingly, moving Defendant did not hire Plaintiff, did not pay Plaintiff, could not unilaterally fire Plaintiff and did not exercise control over Plaintiff's activities. As such, she was not an employee or special employee of moving Defendant and is not barred from bringing suit against either Defendant McFadden or Defendant CCHS.

5

# ARGUMENT

### Standard of review

In a motion for summary judgment, "the moving party bears the burden of proving that no genuine issue as to any material fact exists." Kappes v. E.I. DuPont De Nemours & Co., 1999 U.S. Dist. LEXIS 3580, 10-11 (D. Del. 1999). Accordingly, "a court shall grant summary judgment only if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'[Moreover], the court will 'view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion.'" Id. (Internal citations omitted).

I. **BECAUSE PLAINTIFF WAS NOT AN EMPLOYEE OF CCHS, SHE IS NOT BARRED FROM BRINGING SUIT AGAINST DEFENDANTS.**

The test for determining the existence of an employer-employee relationship involves an analysis of the following factors:
    a)    who hired the worker;
    b)    who had the power to discharge her;
    c)    who paid her wages; and
    d)    who was in control of worker's activities while she was working.

Porter v. Pathfinder Services, Inc., 683 A2d. 40 (Del. 1996). In applying the standard in Porter, an employer-employee relationship did not exist between Plaintiff and Defendant. Therefore, Plaintiff does not fall within the exclusivity provisions of Delaware's Worker's Compensation Statute and is not barred from bringing this lawsuit against Defendants.

### A.   AUREUS HIRED THE PLAINTIFF.

Plaintiff was hired by Aureus, not CCHS. In 2001, 19 months before this incident, Aureus hired Plaintiff, Kimbra Criswell, to work as a traveling X-ray technician. Prior to being directed by Aureus to work at CCHS, Plaintiff had worked at several other locations throughout the country for Aureus. K.C. Tr. at 8-10. Aureus hired Plaintiff to work as a full-time traveling X-ray technician and to fill in at hospitals that were short-staffed. K.C. Tr. at 9. Dawn Shutak, a CCHS employee, testified that CCHS contracts with Aureus to provide x-ray technicians. Shutak understood that when that contract is made, the Plaintiff is working for Aureus. D.S. Tr. at 20. Additionally, Plaintiff never signed any employment contracts with CCHS. KC. Tr. at 78. Plaintiff's pre-CCHS employment history demonstrates that it was Aureus, her employer, who directed where Plaintiff worked. Since September 2001, Plaintiff had worked for Aureus in Florida, Cambridge, Massachusetts, Las Vegas, Nevada, Scotsdale, Arizona and Charlottesville, Virginia. Plaintiff moved from city to city because of her job with Aureus. K.C. Tr. at 8-9. Accordingly, Aureus hired Plaintiff and had the right to direct her where to work.

### B.   AUREUS HAD THE POWER TO FIRE THE PLAINTIFF.

CCHS could not unilaterally fire Plaintiff. According to Dawn Shutak, she did not have the authority to fire Plaintiff. D.S. Tr. at 27. If there was a problem with a Aureus technician, according to Shutak, CCHS employee Maryellen Hoffman, a section supervisor, would call Aureus recruiter Ray Petty. D.S. Tr. 36. Aureus could then remove the technician or Aureus could place the technician at another hospital.

D.S. Tr. 36-37. Ray Petty would be called to deal with any problem of an Aureus technician. D.S. Tr. 37.

CCHS points to the billing and payment contract, A92, to argue that CCHS had discretion to fire Plaintiff. However, the contract reads that "Aureus remove a specific HC professional only for "cause," which will be documented in a written notice provided to Aureus." See Defendant's Appendix at A92. Accordingly, the ultimate firing decision and right to fire is vested with Aureus.

### C.   AUREUS PAID THE PLAINTIFF.

Aureus paid Plaintiff, not CCHS. At the time of the incident, Plaintiff received her paychecks by direct deposit from Aureus. K.C. Tr. at 78. However, Aureus also provided Plaintiff a full benefit and perk package. Specifically, while Plaintiff was working for Aureus, her housing was fully furnished and paid for by Aureus. K.C. Tr. at 80. Aureus paid for her telephone and cable service. K.C. Tr. at 80. Twelve (12%) percent of her earnings went into a 401K that was offered to Plaintiff by Aureus, which Aureus also matched. K.C. Tr. at 80-81. Aureus provided Plaintiff with health insurance and a dental plan. These benefits and the 401K plan were sponsored by and paid for by Aureus, not CCHS. Additionally, according to the client agreement between Aureus and CCHS, Aureus is responsible for paying the wages of Plaintiff, including withholding all applicable income and Social Security taxes; Aureus maintains all payroll and personnel records and Aureus is responsible for providing Workers' Compensation insurance coverage and payment of all applicable payroll taxes, including state and Federal unemployment insurance taxes. See A90 attached to Defendant's Appendix. Accordingly, Aureus paid Plaintiff's

wages and benefits, establishing the existence of the employer-employee relationship between Aureus and Plaintiff, not CCHS.

### D.     CCHS DID NOT CONTROL THE PLAINTIFF'S ACTIVITIES.

The most important element to establish existence of an employer-employee relationship is who controls Plaintiff's activities. Porter, 683 A.2d at 42, See also, Lester C. Newton Trucking Company v. Neal, 204 A2d. 393 (Del. 1964). While an x-ray technician at CCHS, Kim Criswell was a truly independent worker. Her duties were to take x-rays, develop the x-rays, move the x-ray machine, if portable, and speak with the patients. According to Ms. Shutak, the x-ray technician performed these duties on her own. D.S. Tr. at 44-45. Ms. Shutak would not tell Plaintiff how to speak to a patient before taking x-rays, how to place a leather bib on the patient, how to develop the x-rays or how to move the equipment from room to room. D.S. Tr. at 50-52.

**Most significantly, Ms. Shutak admitted that Plaintiff was qualified to operate x-ray machinery without her supervision.**

> Q:   Before this accident, was it your understanding that Kim was qualified to operate the machinery on her own without your supervision?
> A:   Yes.

D.S. Tr. at 28, lines 20-24.

Furthermore, Ms. Shutak does not recall reviewing any protocols with Plaintiff nor did she ever do a written evaluation of Plaintiff. D.S. Tr. at 27. According to Plaintiff, no one at CCHS supervised her activities as an x-ray technician, no one at CCHS trained her on how to operate an x-ray machine, no one at CCHS trained her in how to deal with patients in administrating an x-ray nor was she

9

given any protocols or procedures in the administration of x-rays by Christiana Hospital. Ms. Shutak's only role, *vis-a-vie* Kim Criswell, was to post her schedule. D.S. Tr. at 30. Likewise, according to Plaintiff, Ms. Shutak did not supervise her x-ray technician activities, but was just a dispatcher. K.C. Tr. at 77-76.

Given these facts, it is a fallacy for CCHS to suggest that they exercised control over Plaintiff's activities. Simply stated, Ms. Criswell was a trained, experienced x-ray technician who did not require supervision or control of her work activities.

At best, there is very little CCHS had the right to do or was required to do while Ms. Criswell was performing her activities.

Defendant makes much of Porter v. Pathfinder Services, 683 A2d. 40 (Del. 1996) to argue an employer-"special employee" relationship is created between CCHS and Plaintiff. Porter is distinguishable by the most important factor, supervision. In Porter, the Defendant was responsible for the day-to-day supervision of Porter's work activities. 683 A2d. at 41. Porter was supervised by Defendant's employees on a daily basis and followed all of Defendant's policies, right down to the use of seat belts and ladders. Id. Here, Plaintiff was doing her work on an independent basis using her own experience with absolutely no need to be controlled or supervised by CCHS.

Indeed, Plaintiff and Ms. Shutak agree that CCHS protocols were not reviewed and no written evaluation was performed. In determining whether one who acts for another is a servant or an independent contractor, the Delaware Courts have recognized Section 220 of the Restatement Second of Agency. One of the factors to

be considered is the kind of occupation with reference to whether in the locality, the work is usually done under the direction of the employer or by a specialist without supervision. Falconi v. Combs & Combs, Inc., 902 A2d. 1094 (Del. 2006). Delaware Courts have defined an "independent contractor" as one who is engaged to do work in an independent manner, accountable only as to the results obtained and not subject to the control or supervision of the employer." Id. at 1100. The same rationale applies in the case sub judice. While Ms. Criswell was an employee of Aureus, her activities at CCHS were such that placed her in the role of an independent contractor. See id.

Accordingly, it cannot be held as a matter of law that there was an existence of an employer-special employee relationship between CCHS and Plaintiff.

## CONCLUSION

Plaintiff was not an employee of CCHS. Plaintiff was not a special employee of Defendant CCHS. Therefore, Plaintiff and Defendant McFadden were not co-employees at the time of the incident. Accordingly, Plaintiff is not barred by the exclusivity provision of the Delaware Workers' Compensation Statute from bringing suit against Defendants. Plaintiff has not met its burden and the Court, therefore, should deny Summary Judgment.

Respectfully submitted,

_____
Richard Wier, Jr., (#716)
Richard R. Wier, Jr., P.A.
Two Mill Road, Suite 200
Wilmington, DE 19806

**Of COUNSEL**
Nelson Levin, Esquire
Kats, Jamison, van der Veen & Associates
25 Bustleton Pike
Feasterville, PA 19053

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KIMBRA CRISWELL<br>    Plaintiff,<br><br>v.<br>LYDIA ADAIR MCFADDEN<br>and<br>CHRISTIANA CARE HEALTH<br>SERVICES, INC.,<br>    Defendants. | :<br>:<br>:<br>:<br>:  C.A. No. 05-00321 GMS<br>:  JURY TRIAL DEMANDED<br>:<br>:<br>:<br>: |

**CERTIFICATE OF SERVICE**

I, Richard R. Wier, Jr., Esquire, do hereby certify that on this 11th day of December, 2006, two copies of Plaintiff's Answer to Defendants' Opening Brief in Support of their Motion for Summary Judgment were served via electronic filing and delivered first class, postage-prepaid United States mail upon the following:

Deborah J. Massaro, Esquire
**White and Williams LLP**
824 No. Market Street, Suite 902
P.O. Box 709
Wilmington, DE  19899-0709

_____
Richard R. Wier, Jr., (#716)
Two Mill Road, Suite 200
Wilmington, DE 19806
(302)-888-3222
rwier@wierlaw.com

13