Westlaw.

Not Reported in N.E.2d                                                    Page 1

Not Reported in N.E.2d, 2005 WL 1245641 (Ohio App. 8 Dist.), 2005 -Ohio- 2611
**(Cite as: Not Reported in N.E.2d)**

**H**
Bach v. DiCenzoOhio App. 8 Dist.,2005.
CHECK OHIO SUPREME COURT RULES FOR
REPORTING OF OPINIONS AND WEIGHT OF
LEGAL AUTHORITY.
Court of Appeals of Ohio, Eighth District,
Cuyahoga County.
Sharon L. BACH, et al.
Plaintiffs-Appellees/Cross-Appellants
v.
Dina A. DICENZO, D.O., et al.
Defendants-Appellants/Cross-Appellees
**No. 84396.**

May 26, 2005.

**Background:** Parents of a premature infant brought
a medical malpractice claim against doctor and
doctor's employer. Following a jury trial, the Court
of Common Pleas, Cuyahoga County, No.
CV-470041, entered judgment for parents. Doctor's
employer appealed.

**Holdings:** The Court of Appeals, Celebrezze, P.J.,
held that:

(1) proximate link existed between premature
infant's injury and doctor's actions;

(2) doctor would not have been entitled to
indemnification from hospital under theory of active
and passive negligence;

(3) trial court did not abuse its discretion when it
limited cross-examination of witness by doctor's
employer by precluding employer from asking
witness questions that would require expert opinion
testimony;

(4) trial court's exclusion of video deposition
testimony of infant's treating neurologist as to
infant's life expectancy was not unreasonable,
arbitrary or unconscionable;

(5) total damages award of $15.4 million was not
against manifest weight of evidence;

(6) verdict against doctor's employer was not
against manifest weight of evidence; and

(7) trial court did not abuse its discretion in
awarding prejudgment interest.

Affirmed.

Rocco, J., concurred in part, dissented in part, and
filed an opinion.
West Headnotes
**[1] Health 198H ☞684**

198H Health
    198HV Malpractice, Negligence, or Breach of
Duty
        198HV(C) Particular Procedures
            198Hk683 Obstetrics, Gynecology, and
Reproductive Health
                198Hk684 k. In General. Most Cited
Cases
Proximate link was established between premature
infant's injury and doctor's actions, in medical
malpractice action brought by parents of premature
infant for injuries infant received as result of
oxygen deficiency following birth; although direct
cause of infant's injuries may have been inadequate
resuscitative care performed prior to arrival of
neonatal emergency team from hospital equipped to
handle premature births, doctor set stage for injury
to occur by directing mother to hospital that was not
prepared to handle premature births, and by failing
to wait for arrival of neonatal emergency team
before delivering infant.

**[2] Appeal and Error 30 ☞221**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                                    Page 2

Not Reported in N.E.2d, 2005 WL 1245641 (Ohio App. 8 Dist.), 2005 -Ohio- 2611
**(Cite as: Not Reported in N.E.2d)**

30 Appeal and Error
   30V Presentation and Reservation in Lower Court of Grounds of Review
     30V(B) Objections and Motions, and Rulings Thereon
      30k221 k. Amount of Recovery or Extent of Relief. Most Cited Cases
Contention of doctor's employer that doctor could not be held liable for negligence of others, and that doctor might have right to indemnification from hospital due to negligence of hospital's employees was waived for appellate review of medical malpractice judgment for parents of premature infant that was injured as result of oxygen deficiency following birth, where doctor's employer had opportunity to join hospital as party to suit and chose not to.

**[3] Indemnity 208 €—65**

208 Indemnity
   208III Indemnification by Operation of Law
     208k63 Particular Cases and Issues
      208k65 k. Torts, in General. Most Cited Cases
Even if hospital had been made party to medical malpractice action brought by parents of premature infant against doctor and doctor's employer, doctor would not have been entitled to indemnification from hospital under theory of active and passive negligence, where parents alleged, and jury found, that doctor and hospital were joint tortfeasors, so indemnification would not lie because doctor and hospital would be jointly chargeable with actual negligence.

**[4] Evidence 157 €—535**

157 Evidence
   157XII Opinion Evidence
     157XII(C) Competency of Experts
      157k535 k. Necessity of Qualification. Most Cited Cases
Trial court did not abuse its discretion in medical malpractice action when it limited cross-examination of witness by doctor's employer by precluding employer from asking witness questions that would require expert opinion testimony; witness was not qualified as expert, and

witness had not submitted expert's report. Rules Civ.Proc., Rule 62.

**[5] Pretrial Procedure 307A €—202**

307A Pretrial Procedure
   307AII Depositions and Discovery
     307AII(C) Discovery Depositions
      307AII(C)5 Use and Effect
       307Ak201 Use
        307Ak202 k. Admissibility in General. Most Cited Cases
Trial court's exclusion of video deposition testimony of infant's treating neurologist as to infant's life expectancy was not unreasonable, arbitrary or unconscionable, in medical malpractice action brought by parents of premature infant against doctor and doctor's employer for injuries infant received as result of oxygen deficiency following birth; neurologist's statement that infant's afflictions were "likely to result in problems" was not definitive comment on infant's life expectancy, life care plan submitted to trial court reflected assumption of normal life expectancy for infant, and doctor's employer failed to challenge assumption by providing alternate expert opinion. Rules Civ.Proc., Rule 62.

**[6] Health 198H €—832**

198H Health
   198HV Malpractice, Negligence, or Breach of Duty
     198HV(G) Actions and Proceedings
      198Hk828 Damages
       198Hk832 k. Amount. Most Cited Cases
Total damages award of $15.4 million was not against manifest weight of evidence in medical malpractice action brought by parents of premature infant against doctor and doctor's employer for injuries to infant that resulted from oxygen deficiency following birth; testimony at damages haring indicated that infant would have earned over $2.6 million during course of his lifetime, life care plan indicated that it would cost $6.2 million for home medical care, or $5.4 million for institutional medical care over infant's lifetime, infant's economic losses were estimated at approximately

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d

Not Reported in N.E.2d, 2005 WL 1245641 (Ohio App. 8 Dist.), 2005 -Ohio- 2611
**(Cite as: Not Reported in N.E.2d)**

$7.6 million, and deductions were made from life plan for infant's problems that were unrelated to medical malpractice. Rules Civ.Proc., Rule 59(A)(6).

**[7] Health 198H ☞823(9)**

198H Health
    198HV Malpractice, Negligence, or Breach of Duty
        198HV(G) Actions and Proceedings
            198Hk815 Evidence
                198Hk823 Weight and Sufficiency, Particular Cases
                    198Hk823(9) k. Obstetrics, Gynecology, and Reproductive Health. Most Cited Cases
Verdict against doctor's employer in medical malpractice action brought by parents of premature child for injuries child received as result of oxygen deprivation at birth was not against manifest weight of evidence; doctor directed mother to hospital that was not equipped to handle premature births, and doctor delivered baby without waiting for arrival of emergency neonatal team from hospital equipped to handle premature births.

**[8] Interest 219 ☞39(2.50)**

219 Interest
    219III Time and Computation
        219k39 Time from Which Interest Runs in General
            219k39(2.5) Prejudgment Interest in General
            219k39(2.50) k. Torts; Wrongful Death. Most Cited Cases
Doctor's employer failed to make good faith effort to settle, and thus trial court did not abuse its discretion in awarding prejudgment interest on judgment against doctor's employer in medical malpractice action brought by parents of premature infant for injuries infant received as result of oxygen deprivation following birth; doctor's employer offered $100,000 to settle case before trial, parents requested $15 million to settle, doctor's employer made no counteroffer and never moved off initial $100,000 offer, parents made it clear they would settle for policy limits any time,

and jury awarded total damages of $15.4 million. R.C. § 1343.03.

Civil appeal from Common Pleas Court Case No. CV-470041, Affirmed.

John F. King, King & Associates, Cleveland, Ohio, Michael E. Murman, Murman & Associates Lakewood, Ohio, for plaintiffs-appellees/Cross-appellants, Sharon L. Bach, et al.
Clifford C. Masch, Martin T. Galvin, Stephen E. Walters, Reminger & Reminger Co., L.P.A., Cleveland, Ohio, Herman N. Visani, Cleveland, Ohio, for Defendants-Appellants/Cross-appellees, Powers Professional Corp.
Wayne C. Dabb, Jr., Randall L. Solomon, Baker & Hostetler, L.L.P., Cleveland, Ohio, Patrick F. Smith , Columbus, Ohio, for Defendant, The MIIX Group of Companies.
Kenneth W. Behrend, Behrend & Ernsberger, P.C., Pittsburgh, Pennsylvania, Thomas G. McNally, Rocky River, Ohio, for defendant, Dina DiCenzo, D.O., et al.
Dina Dicenzo, D.O., Pittsburgh, Pennsylvania, defendant, pro se.
Ernest W. Auciello, Jr., Gallagher, Sharp, Fulton & Norman, Cleveland, Ohio, for St. Paul Insurance Co.
Kenneth A. Torgerson, Weston, Hurd, Fallon, Paisley & Howle, Cleveland, Ohio, for Parma Community Hospital.

JOURNAL ENTRY AND OPINION
CELEBREZZE, Presiding J.
*1 {¶ 1} The appellant, Powers Professional Corporation ("Powers"), challenges various rulings made by the trial court as well as the jury's verdict and the subsequent award of monetary damages rendered in favor of the plaintiffs/appellees, Sharon, Christopher, and Garrett Bach, regarding a medical malpractice claim. Powers also appeals from the trial court's award of prejudgment interest. After reviewing the arguments of the parties and the applicable law, we affirm the decisions rendered below.

{¶ 2} On May 7, 1998, Sharon Bach ("Sharon") gave birth at 24 weeks gestation to a premature

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                        Page 4

Not Reported in N.E.2d, 2005 WL 1245641 (Ohio App. 8 Dist.), 2005 -Ohio- 2611
**(Cite as: Not Reported in N.E.2d)**

baby, Garrett, who was improperly cared for during the first 16 minutes of his life. During this time, the baby suffered hypoxia,[FN1] which caused permanent brain damage, cerebral palsy, and other medical complications. Sharon gave birth to the baby at Parma Hospital, which does not generally deliver babies before 35 weeks.

> FN1. Hypoxia: 1, An oxygen deficiency. 2. A decreased concentration of oxygen in the inspired air (Tabers Cyclopedic Medical Dictionary).

{¶ 3} Sharon's care was managed by Dr. Dina DiCenzo, an employee of Powers Professional Corporation, also known as "Women and Wellness." Dr. DiCenzo directed Sharon to Parma Hospital upon the onset of her symptoms on May 7, instead of to MetroHealth Medical Center, which has the capability of caring for extremely premature newborns. During Sharon's labor, a team of doctors and nurses specializing in neonatal care at MetroHealth was dispatched via "Life Flight" to Parma Hospital. When it became clear that Sharon was in labor that could not be reversed, Dr. DiCenzo made the decision to deliver Garrett by caesarean section before the MetroHealth emergency team could arrive at Parma Hospital. The "Code Pink" team at Parma Hospital was unable to ventilate Garrett after he was born, causing hypoxia. Garrett was eventually ventilated by the MetroHealth team, but there was a delay of approximately ten minutes in getting that team into the delivery room.

{¶ 4} Sharon, Christopher and Garrett Bach filed suit alleging medical malpractice against Dr. DiCenzo, Powers, Dr. Barich, a respiratory doctor at Parma, and Parma Hospital. Parma Hospital and Dr. Barich settled the case with the Bachs for approximately 2.5 million dollars.

{¶ 5} Trial was held as to Bach's case against Powers and Dr. DiCenzo on November 17, 2003. At trial, Powers stipulated that it was vicariously liable for all acts and/or omissions of Dr. DiCenzo. The jury found in favor of the plaintiffs and awarded Garrett 9.4 million dollars and each of

Garrett's parents 3 million dollars, for a total damages award of approximately 15.4 million dollars. Appellants filed motions for a new trial and for judgment notwithstanding the verdict, which were overruled. The trial court granted the Bachs' motion for prejudgment interest on February 26, 2004, and the Bachs were awarded another 8.5 million dollars. The total award is nearly 24 million dollars.

{¶ 6} On April 5, 2005, the insurer [FN2] of both defendants deposited with the court the sum of $3,965,176.22; the trial court set the amount of supersedeas bond to stay execution of the judgment at 27 million dollars. Neither Powers nor Dr. DiCenzo posted the bond, and the funds were distributed to the Bachs on August 4, 2004. Further payments to the Bachs were made on behalf of Dr. DiCenzo and Powers by the excess insurance carrier, St. Paul Fire and Marine Insurance Co., in the sum of 2 million dollars.

> FN2. The insurer, MIIX Group Companies, appealed the jury award in two separate appeals, Case Nos. 84940 and 85048. Both appeals were dismissed as moot.

*2 {¶ 7} Powers now appeals the decision of the trial court. Dr. DiCenzo voluntarily dismissed her appeal on April 20, 2004, and is no longer a party to this appeal. Powers presents six assignments of error for our review.

{¶ 8} "I. THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT POWERS PROFESSIONAL CORPORATIONS'S [SIC] MOTION FOR A DIRECTED VERDICT FOR WANT OF COMPETENT, CREDIBLE EVIDENCE WHICH COULD LEAD A REASONABLE JURY TO CONCLUDE THAT THERE WAS [SIC] PROXIMATE CAUSE NEXUS BETWEEN ANY ALLEGED NEGLIGENCE OF DR. DICENZO AND THE HYPOXIC INJURY SUSTAINED BY GARRETT BACH WHILE UNDER THE CARE AND TREATMENT OF THE PARMA HOSPITAL ' CODE PINK' TEAM."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                                        Page 5

Not Reported in N.E.2d, 2005 WL 1245641 (Ohio App. 8 Dist.), 2005 -Ohio- 2611
**(Cite as: Not Reported in N.E.2d)**

{¶ 9} Civ.R. 50(A)(4) states in pertinent part: " When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." Upon a motion for JNOV (judgment notwithstanding the verdict), the court may not weigh the evidence or test the credibility of witnesses, but will construe the evidence most strongly in favor of the party against whom the motion is made and determine whether, as a matter of law, the moving party would have been entitled to a directed verdict. *Thomas v. Keller, Admr.* (1967), 9 Ohio App.2d 237, 224 N.E.2d 165; *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 504 N.E.2d 19. Whether the denial of a motion for directed verdict or JNOV has been made in error is an issue which should be reviewed de novo. *Goodyear Tire & Rubber v. Aetna Cas. & Sur. Co.,* 95 Ohio St.3d 512, 769 N.E.2d 835, 2002-Ohio-2842.

[1] {¶ 10} Appellant claims that there was insufficient evidence to find that Dr. DiCenzo committed medical malpractice because she had no control over the actions of the Parma Hospital team that attempted, and failed, to resuscitate Garrett after his birth. The evidence shows, however, that Dr. DiCenzo was in charge of Sharon's delivery and made the choice to send Sharon to Parma instead of to MetroHealth when she was experiencing the signs of early labor. Then Dr. DiCenzo ordered and subsequently cancelled Sharon's transfer to MetroHealth after she examined Sharon and confirmed that Sharon was in premature labor.

{¶ 11} Dr. DiCenzo admitted that she delivered Garrett in a hospital that cannot care for a seriously premature baby. She also testified that she knew Parma was not equipped or staffed to care for an infant of less than 35 weeks' gestation on the date of Garrett's delivery. Further, she admitted that she requested the team from MetroHealth to be present at the child's delivery because of the inexperience of the Parma neonatal team. She failed, however, to

wait for the MetroHealth team to be present in the delivery room prior to the child's birth.

*3 {¶ 12} Medical experts Dr. Russel Jelsema and Dr. Paul Gatewood explained why these actions on the part of Dr. DiCenzo violated the applicable standard of care. Dr. Gatewood stated that a woman in Sharon Bach's stage of premature labor should be seen by a Level III hospital if at all possible, a hospital equipped to adequately care for a very premature baby. Parma Hospital is a Level I hospital, meaning that it is generally equipped to treat only uncomplicated newborn deliveries. Dr. Jelsema echoed this sentiment and stated that Garrett should not have been delivered until the proper neonatal resuscitation team was in place. Finally, Dr. Prabhu Parimi, the attending neonatologist from MetroHealth indicated that babies delivered at 24 weeks must have a skilled neonatal team present to deal with complications immediately following birth.

{¶ 13} Based on this testimony, even when construed in the light most favorable to appellant, a reasonable jury could find a proximate link between Garrett's injury and Dr. DiCenzo's actions. While the direct cause of Garrett's injuries may have been the inadequate resuscitative care performed prior to the arrival of the MetroHealth team, Dr. DiCenzo's actions set the stage for the injury to occur based on her knowledge of Parma's inability to care for a seriously premature infant. Therefore, we cannot find that the trial court erred in denying the motion for directed verdict, and the first assignment of error is overruled.

{¶ 14} "II. ASSUMING ARGUENDO THAT THIS COURT FINDS A GENUINE ISSUE OF MATERIAL FACT ON THE ISSUE OF PROXIMATE CAUSE RELATIVE TO THE CARE AND TREATMENT OF DR. DICENZO AND GARRETT BACH'S HYPOXIC INJURY, ANY NEGLIGENCE OF DR. DICENZO AND DEFENDANT-APPELLANT POWERS PROFESSIONAL CORPORATION MUST BE DEEMED PASSIVE IN NATURE VERSUS THE ACTIVE NEGLIGENCE OF THE PARMA HOSPITAL 'CODE PINK' TEAM."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d

Not Reported in N.E.2d, 2005 WL 1245641 (Ohio App. 8 Dist.), 2005 -Ohio- 2611
**(Cite as: Not Reported in N.E.2d)**

[2] {¶ 15} Appellant next argues that Dr. DiCenzo cannot be held liable for the negligence of others and that she may have a right of indemnification from Parma Hospital due to the negligence of the " Code Pink" team. However, Parma Hospital is not a party to this action, and appellant did not move to join Parma to the suit. The failure to raise an issue in the trial court results in a waiver of the issue for purposes of appeal, and may only be addressed where there is plain error. *See Goldfuss v. Davidson,* 79 Ohio St.3d 116, 121, 1997-Ohio-401, 679 N.E.2d 1099; *LeFort v. Century 21-Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 123, 512 N.E.2d 640. The plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. *Goldfuss,* 79 Ohio St.3d at 122-123, 679 N.E.2d 1099. Such is not the case here. Powers had the opportunity to join Parma and chose not to. Therefore, the issue is waived for purposes of appeal.

*4 [3] {¶ 16} Moreover, "active negligence" requires the breach of an affirmative duty-whether through act or omission-by a person who has the power to prevent the injury. See Black's Law Dictionary (5 Ed.1979) 31; see, generally, *Lattea v. Akron* (1992), 9 Ohio App.3d 118 at 126, 458 N.E.2d 868. "Passive negligence" is a failure to fulfill some obligation imposed by law, and the obligation is imposed because of a relationship between the actual wrongdoer and the other party. Black's Law Dictionary (5 Ed.1979) 31; *Reynolds v. Physicians Ins. Co. of Ohio* (1993), 68 Ohio St.3d 14, 16, 623 N.E.2d 30. Finally, "active" and " passive," as applied to negligence, do not connote a greater or lesser degree of negligence; indemnification does not lie where parties are jointly chargeable with actual negligence. *Reynolds,* 68 Ohio St.3d 14, 16, 623 N.E.2d 30. Even if Parma had been a party to the case, plaintiff alleged and the jury found that Dr. DiCenzo and Parma were joint tortfeasors, not that Dr. DiCenzo was liable for the actions of the Parma staff merely because she was the attending physician at the birth.

*See Motorists Mut. Ins. Co. v. Huron Road Hospital,* 73 Ohio St.3d 391, 1995-Ohio-119, 653 N.E.2d 235. Therefore, appellant's second assignment of error lacks merit and is overruled.

{¶ 17} "III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN RESTRICTING THE SCOPE OF DEFENDANT-APPELLANT POWERS PROFESSIONAL CORPORATION'S PERMISSIBLE CROSS-EXAMINATION OF A PARMA HOSPITAL 'CODE PINK' TEAM MEMBER AND A TREATING NEUROLOGIST."

[4] {¶ 18} Appellant next argues that the trial court erred in limiting the testimony of Dr. Barich, a pediatrician, and Dr. Friedman, Garrett's treating neurologist. "The scope of cross-examination and the admissibility of evidence during cross-examination are matters which rest in the sound discretion of the trial judge. Thus, when the trial court determines that certain evidence will be admitted or excluded from trial, it is well established that the order or ruling of the court will not be reversed unless there has been a clear and prejudicial abuse of discretion." *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 222, 436 N.E.2d 1008, quoting *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 407 N.E.2d 490. To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. In order to find an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1

{¶ 19} In this case, the trial court ordered that no expert testimony would be permitted from a witness who had not submitted an expert report. Further, expert testimony would be limited to the contents of any report submitted. Appellees called Dr. Barich as a witness to the events which occurred at Parma Hospital on the night of Garrett's birth. He was not qualified as an expert and did not submit an expert's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d

Not Reported in N.E.2d, 2005 WL 1245641 (Ohio App. 8 Dist.), 2005 -Ohio- 2611
**(Cite as: Not Reported in N.E.2d)**

report. During cross examination, the following exchange occurred:

*5 {¶ 20} "Q. Was there any reason even though Metro was on its way over for anybody to tell Dr. DiCenzo don't deliver this infant?

{¶ 21} "A. No.

{¶ 22} "Q. Would that have been the proper thing to do?

{¶ 23} "MR KING: Objection, your Honor. That's for an expert opinion. He is not identified as an expert.

{¶ 24} " * * *

{¶ 25} "THE COURT: I am of the opinion we should hear what Dr. Barich has to say."

{¶ 26} Thereupon, appellant's counsel was permitted to cross examine Dr. Barich extensively regarding the proper care of an infant delivered at 24 weeks. Later in the cross examination, counsel for the Bachs again objected to appellant's questioning as calling for an expert opinion from a witness not called as an expert. After hearing arguments from counsel at sidebar, the court sustained the objection and instructed counsel for appellant to refrain from asking questions of Dr. Barich calling for an expert opinion. On recross, however, appellee's counsel objected on the same grounds, which was overruled by the judge.

{¶ 27} After a review of Dr. Barich's testimony in its entirety, we cannot say that the trial court abused its discretion in handling objections from counsel and imposing limitations on the scope of the testimony. The trial court did not act unreasonably, unconscionably or arbitrarily, and its actions did not run afoul of substantial justice. Civ.R. 62.

[5] {¶ 28} Appellant also argues that the video deposition testimony of Dr. Friedman was impermissibly limited by the trial court. Testimony as to the life expectancy of Garrett was limited by the trial court as a result of a successful motion filed by the appellees because no party produced an

expert or report to address the issue of whether Garrett would have a shortened life expectancy. Dr. Friedman's testimony on the subject was as follows:

{¶ 29} "A. So the fact that he has severe cerebral palsy, the fact that he does have seizure disorder places him at higher risk of dying at a younger age.

{¶ 30} "Q. Okay. And it's based upon the neurologic complications resulting from premature birth that will play a direct role in his life expectance?

{¶ 31} "A. I can't comment with respect to Garrett on that-

{¶ 32} "Q. Okay.

{¶ 33} "A. As to what caused what.

{¶ 34} "Q. Okay.

{¶ 35} "A. But the fact that he has neurological injury-

{¶ 36} "Q. Okay.

{¶ 37} "A. Is likely to result in problems."

{¶ 38} This testimony does not indicate that Dr. Friedman rendered an expert opinion as to the life expectancy with any degree of medical certainty. We cannot say that Dr. Friedman's statement that Garrett's afflictions are "likely to result in problems" constitutes a definitive comment on his life expectancy. Further, the life care plan submitted to the trial court reflected a normal life expectancy for Garrett. Appellant had the opportunity to challenge this assumption by providing an alternative expert opinion, but failed to do so. We cannot find that the exclusion of Dr. Friedman's testimony on the subject was unreasonable, arbitrary or unconscionable. Therefore, appellant's third assignment of error is overruled.

*6 {¶ 39} "IV. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN DENYING DEFENDANT-APPELLANT POWERS PROFESSIONAL CORPORATION'S

Not Reported in N.E.2d                                                                                         Page 8

Not Reported in N.E.2d, 2005 WL 1245641 (Ohio App. 8 Dist.), 2005 -Ohio- 2611
**(Cite as: Not Reported in N.E.2d)**

MOTION FOR A NEW TRIAL WHERE THE DAMAGES AWARDED WERE EXCESSIVE AND GIVEN UNDER THE INFLUENCE OF PASSION AND PREJUDICE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

[6] {¶ 40} Civ.R. 59(A)(6) provides that a trial court may order a new trial if it is apparent that the verdict is not sustained by the manifest weight of the evidence. A reviewing court may reverse the trial court's order if the trial court abused its discretion in failing to order a new trial. *Antal v. Olde Worlde Products* (1984), 9 Ohio St.3d 144, 145, 459 N.E.2d 223. The high abuse of discretion standard defers to the trial court order because the trial court's ruling may require an evaluation of witness credibility which is not apparent from the trial transcript and record. *Schlundt v. Wank* (Apr. 17, 1997), Cuyahoga App. No. 70978. Therefore, as long as the evidence is supported by substantial competent, credible evidence, the jury verdict is presumed to be correct and the trial court must refrain from granting a new trial. Id.

{¶ 41} The damages award in this case was supported by competent, credible evidence. Testimony was produced at the damages hearing that Garrett would have earned over 2.6 million dollars over the course of his lifetime. A life care plan was also produced and indicated that it would cost 6.2 million dollars for home medical care or 5.4 million dollars for institutional medical care of Garrett over his lifetime. Garrett's total economic losses were estimated at approximately 7.6 million dollars.

{¶ 42} The record also indicates that deductions were made from the life plan because Garrett has problems with his eyes and gastrointestinal system, which are unrelated to the medical malpractice of the appellant. Appellant had ample opportunity to cross examine the witnesses called by appellee relative to the damages calculations. Where the economic damages total almost eight million dollars, we cannot find that an award of non-economic damages of approximately seven million dollars is unreasonable. The damages verdict is not unreasonable given the evidence produced at trial; therefore, appellant's fourth

assignment of error is overruled.

{¶ 43} "V. THE UNDERLYING VERDICT AGAINST DEFENDANT-APPELLANT POWERS PROFESSIONAL CORPORATION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

[7] {¶ 44} We overrule this assignment of error for the reasons discussed above. There was sufficient evidence produced by the appellees to defeat a directed verdict and to justify a large monetary award. Based on that same evidence, we cannot find that the jury lost its way in finding that Dr. DiCenzo committed medical malpractice.

{¶ 45} "VI. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN AWARDING PREJUDGMENT INTEREST TO APPELLEES AFTER THE JURY VERDICT."

{¶ 46} Prejudgment interest is authorized pursuant to R.C. 1343.03 which states in pertinent part:

*7 [8] {¶ 47} "(C) Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case, and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

{¶ 48} The seminal decision setting forth the guidelines for Ohio courts determining the question of prejudgment interest is *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 495 N.E.2d 572, at the syllabus, where the court held:

{¶ 49} "A party has not 'failed to make a good faith effort to settle' un der R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                                       Page 9

Not Reported in N.E.2d, 2005 WL 1245641 (Ohio App. 8 Dist.), 2005 -Ohio- 2611
**(Cite as: Not Reported in N.E.2d)**

any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer."

{¶ 50} The *Kalain* court also noted that the statute requires all parties to make an honest effort to settle a case. A party may have "failed to make a good faith effort to settle," even when he has not acted in bad faith. The decision as to whether a party's settlement efforts indicate good faith is generally within the sound discretion of the trial court. Id., citing to *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 482 N.E.2d 1248. The party seeking prejudgment interest bears the burden of demonstrating that the other party failed to make a good faith effort to settle the case. *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 659, 635 N.E.2d 331.

{¶ 51} Likewise this court has held that an allegation that the trial court abused its discretion in awarding prejudgment interest is tantamount to alleging that the trial court acted unreasonably, arbitrarily, or unconscionably. *Algood v. Smith* (Apr. 20, 2000), Cuyahoga App. Nos. 76121, 76122. Such judgments, which rely so heavily on findings of fact, will not be disturbed on appeal as being unreasonable or arbitrary if supported by some competent, credible evidence. Id.

{¶ 52} In determining whether these efforts were reasonable, the trial court is not limited to the evidence presented at the prejudgment interest hearing. The court may also review the evidence presented at trial, as well as its prior rulings and jury instructions, especially when considering such factors as the type of case, the injuries involved, applicable law, and the available defenses. Otherwise, "the hearing required under R.C. 1343.03(C) may amount to nothing less than a retrial of the entire case." *Galmish v. Cicchini,* 90 Ohio St.3d 22, 734 N.E.2d 782, citing to *Moskovitz,* supra, at 661, 635 N.E.2d 331.

*8 {¶ 53} Finally, when considering a trial court's decision on a motion for prejudgment interest, this court's duty is to determine whether the trial court abused its discretion. *Kalain,* supra. If there is evidence in the record which supports the trial court's decision, it should be affirmed. *Bisler v. Del Vecchio* (July 1, 1999), Cuyahoga App. No. 74300.

{¶ 54} The appellant contends that it made a good faith effort to settle the instant matter. The record indicates that the appellant offered $100,000 to settle the case before trial, although it had settlement authority up to $500,000. The appellee requested 15 million dollars to settle the case at the beginning of trial. No counteroffer was ever made; the appellant never moved off the initial $100,000 offer. The appellant and its counsel testified that their assessment of the case left Powers with a 50-60 percent chance of obtaining a defense verdict. The plaintiffs made it clear that they would settle for the policy limits anytime, even after the trial had begun.

{¶ 55} Based on the evidence presented at trial, and at the prejudgment interest hearing, we cannot determine that the trial court abused its discretion in awarding prejudgment interest. Moreover, appellant has partially satisfied the judgment with voluntary payments to the plaintiffs, precluding them from now contesting the damages award. *Miner v. Witt* (1910), 82 Ohio St. 237, 92 N.E. 21; *LaFarciola v. Elbert* (Dec. 8, 1999), Lorain App. No. 98CA007134. Pursuant to Civ.R. 62(B), an appellant is entitled, as a matter of law, to a stay of execution pending appeal, provided that the appellant posts the supersedeas bond in the amount established by the trial court. *Lafarciola,* at 4. Appellant failed to do so. Therefore, we find no merit in appellant's final assignment of error.

Judgment affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                                  Page 10

Not Reported in N.E.2d, 2005 WL 1245641 (Ohio App. 8 Dist.), 2005 -Ohio- 2611
**(Cite as: Not Reported in N.E.2d)**

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

ANTHONY O. CALABRESE, Jr., J., concurs.
KENNETH A. ROCCO, J., concurs in Part and dissents in Part (With Separate Opinion).
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).

## CONCURRING & DISSENTING OPINION
KENNETH A. ROCCO, J. concurring & dissenting.
*9 {¶ 56} I agree with the majority that appellants' first five assignments of error lack merit and that the judgment awarding monetary damages to plaintiffs-appellees should be affirmed. However, in my opinion, defendants-appellants had an objectively reasonable basis for believing that they were not liable. Therefore, they did not fail to make a good faith effort to settle this matter. Although their defense was ultimately unsuccessful, they should not be penalized for pursuing it at trial. Consequently, I would hold that the award of prejudgment interest was an abuse of discretion.

{¶ 57} Before addressing appellants' assignments of error, however, I would have addressed two potentially dispositive arguments raised by appellees. I believe these arguments ultimately lack merit, but appellees still deserve a ruling from this court on them.

{¶ 58} First, appellees argue that this appeal is moot because a portion of the judgment has been paid. While voluntary full satisfaction of a judgment will moot an appeal, I cannot agree that partial satisfaction has the same effect. Appellants' insurers

paid less than $4,000,000 on a total award of almost $24,000,000. I perceive no reason why appellants should not be permitted to pursue this appeal, at least to the extent that the judgment has not been paid. Therefore, I would reject this argument.

{¶ 59} Second, appellees contend that Dr. DiCenzo's dismissal of her appeal is dispositive of Powers Professional Corp.'s appeal, because Powers conceded that it was vicariously liable for Dr. DiCenzo's actions and Dr. DiCenzo now admits liability. I was unable to find any Ohio authority on this issue. Other jurisdictions have had mixed reactions to it. Compare *Rogers v. J.B. Hunt Transport* (2001), 244 Mich.App. 600, 624 N.W.2d 532 with *Stillwell v. Wheeling* (2001), 210 W.Va. 599, 558 S.E.2d 598; *United Salt v. McKee* (1981), 96 N.M. 65, 628 P.2d 310.

{¶ 60} In my opinion, an employer should not be bound by its employee's actions in litigation when the employee is separately named as a party because the employer cannot control the employee in that circumstance. Thus, I agree with the line of authority which holds that a judicial admission of liability by an employee is not a proper foundation for vicarious liability and that the employer may contest the issue of the employee's negligence even if the employee does not. Accordingly, I would hold that Dr. DiCenzo's dismissal of her appeal was not dispositive of Powers' appeal.

{¶ 61} Turning now to the prejudgment interest issue, prejudgment interest may be awarded if the court determines that the party required to pay a money judgment "failed to make a good faith effort to settle the case," and the party receiving the award did not fail to make such a good faith effort. R.C. 1343.03(C). We review the trial court's decision whether to award prejudgment interest under an abuse of discretion standard. *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 495 N.E.2d 572. In *Kalain,* the supreme court held that:

*10 {¶ 62} "A party has not 'failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d

Not Reported in N.E.2d, 2005 WL 1245641 (Ohio App. 8 Dist.), 2005 -Ohio- 2611
**(Cite as: Not Reported in N.E.2d)**

delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer."

{¶ 63} As the majority correctly notes, prior to trial, appellants' trial counsel assessed the probability of a defense verdict at 50 percent; their insurer's counsel believed that the likelihood of a defense verdict was 60 percent. These assessments were based on the strength of a factual argument, that any negligence by Dr. DiCenzo was not a proximate cause of the injury because of the Code Pink Team's intervening negligence in failing to properly intubate the infant. This argument was objectively reasonable, though unsuccessful. Therefore, appellants' minimal offer of settlement was not unwarranted; indeed, appellants would have been justified in not making any offer. Consequently, I would hold that appellants did not " fail to make a good faith effort to settle" this matter, and the award of prejudgment interest was an abuse of discretion.

Ohio App. 8 Dist.,2005.
Bach v. DiCenzo
Not Reported in N.E.2d, 2005 WL 1245641 (Ohio App. 8 Dist.), 2005 -Ohio- 2611

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.