Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 253117 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

**H**
Moore North America, Inc. v. Poser Business
Forms, Inc.D.Del.,2001.Only the Westlaw citation
is currently available.
United States District Court, D. Delaware.
MOORE NORTH AMERICA, INC., Plaintiff,
Counter-Defendant,
v.
POSER BUSINESS FORMS, INC., Defendant,
Counter-Claimant.
**No. Civ.A. 97-712-SLR.**

March 8, 2001.

Thomas P. Preston, of Reed, Smith, Shaw &
McClay, Wilmington, Delaware, for plaintiff,
counter-defendant.
Robert A. Vanderhye, James D. Berquist, Robert A.
Rowan, and Jonathon Reavill, of Nixon &
Vanderhye, Arlington, Virginia, for plaintiff,
counter-defendant, of counsel.
N. Richard Powers, and Patricia Smink Rogowski,
of Connolly, Bove, Lodge & Hutz, Wilmington,
Delaware, for defendant, counter-claimant.
Thomas H. Young, Stephen D. Bell, and W.
Robinson H. Clark, of Dorsey & Whitney, Denver,
Colorado, for defendant, counter-claimant, of
counsel.

MEMORANDUM OPINION
ROBINSON, Chief J.

I. INTRODUCTION

*1 Plaintiff Moore North America, Inc. filed this
patent infringement action on December 30, 1997
against defendant Poser Business Forms, Inc.,
alleging that defendant infringes U.S. Patent No.
4,918,128 ("the '128 patent"); U.S. Patent No.
5,201,464 ("the '464 patent"); and U.S. Patent No.
5,253,798 ("the '798 patent"). Both plaintiff and
defendant are engaged in the business of
manufacturing and selling preformed, paper

mailers. (D.I.158) Both the '464 and '798 patents
are directed to the construction of a "one-piece
mailer" which is a single sheet of paper that can be
printed, folded, sealed, and mailed without the need
for a separate envelope. (D.I. 139 at 4) The '128
patent is directed toward a pressure-sensitive
adhesive that holds different mailers together.

Defendant denied infringement of all three
patents-in-suit and filed a counterclaim for
declaratory judgment of noninfringement,
invalidity, and unenforceability. Defendant
subsequently filed additional unfair competition
counterclaims. The court has previously issued
several orders in this case relating to claim
construction and summary judgment motions.

Currently before the court are several motions for
partial summary judgment submitted by both parties
regarding the '128 patent. Both parties submitted
extensive briefs on these issues, and oral argument
was heard on February 28, 2001. The court decides
the various motions as follows.

II. BACKGROUND

Both parties filed cross motions for summary
judgment on the issues of infringement and validity.
Poser challenges the validity of the '128 patent
under various theories, including anticipation under
35 U.S.C. § 102, obviousness under 35 U.S.C. § 103
, and lack of enablement and failure to describe the
best mode under 35 U.S.C. § 112 ¶ 1.[FN1] Poser
also claims the '128 patent is unenforceable due to
inequitable conduct. (D.I.281) Moore filed a motion
for summary judgment that the claims of the '128
patent were not invalid for lack of enablement,
indefiniteness, and adding new matter under 35
U.S.C. § 132. (D.I.286) Poser did not oppose the
motions based on indefiniteness and adding new
matter. Therefore, plaintiff's corresponding motions
are granted with respect to those defenses.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2

Not Reported in F.Supp.2d, 2001 WL 253117 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

FN1. Poser's best mode defense is addressed in the court's decisions to the motions in limine.

Claims 1 and 3 of the '128 patent, the only claims at issue, provide:
1. A pressure-sensitive adhesive which comprises in admixture:
(a) natural rubber graft copolymerized with styrene and methyl methacrylate in the form of a latex; and
(b) a finely divided hard particulate matter having no thermoplasticity dispersed in the latex.
3. The pressure-sensitive adhesive as claimed in claim 1 wherein the finely divided particulate material having no thermoplasticity is a silica gel powder or a zeolite powder.

On February 14, 2001, the court issued a claim construction order defining the term " pressure-sensitive adhesive" to mean a " composition which allows adhesion to be initiated through the application of pressure." (D.I.353) The court reserved ruling on other disputed claim terms.

## A. VALIDITY

### 1. Anticipation

*2 Poser points to four prior art references that allegedly anticipate claims 1 and 3 under 35 U.S.C. § 102(b). The references include: GB patent no. 788,651 ("GB '651"); EP patent application no. 0043512 A1 ("EP '512"); U.S. patent no. 4,495,324 ("the '324 patent"); and GB patent no, 936,666 (" GB '666"). Moore argues that none of these references contain each claim limitation of the claims in dispute.

### 2. Obviousness

Poser cites fourteen additional prior art references [FN2] and asserts that the '128 patent would have been obvious to one of ordinary skill in the art at the time of the invention. Poser posits three obviousness theories. First, Poser argues that the claims are anticipated by the four prior art references described above. Second, Poser asserts that both (1) a graft copolymer of MMA, styrene, and natural rubber and (2) silica were known in the adhesive art, as were their effects, making their combination in an adhesive obvious. Finally, it would have been obvious to substitute styrene for some of the MMA found in prior art adhesives that describe adhesive mixtures of MMA/natural rubber graft copolymer and silica. (D.I. 283 at 9) Moore and its experts disagree on the scope and content of the prior art references and whether there was a motivation to combine any of the fourteen references.

FN2. The references include Canadian patent no. 647, 530; U.S. patent nos. 3,644,584; 3,956,217; 3,925,271; 4,782,106; and Japanese patent and/or abstract nos. JP 57-28178; JP 50-80330; JP 59-164377; JP 61-35279; JP 62-158771; JP 158772; JP 62-158773; JP 57-192474; and JP 57-192475.

### 3. Enablement

Both parties filed cross motions for summary judgment on the issue of enablement. Poser asserts that the '128 patent is invalid because the claimed invention is not enabled. Specifically, Poser contends that the '128 patent does not disclose details enabling one skilled in the art to make the claimed graft copolymer. Moore contends that those of skill in the art have known for forty years how to create a graft copolymer of natural rubber, MMA, and styrene.

The issue of enablement came up during prosecution. After the applicant submitted the original claim language, the examiner queried:
How is the graft-copolymerization performed? It is the Examiner's position that applicants have not provided an enabling disclosure of the graft copolymerization of natural rubber with styrene and methyl methacrylate.

(D.I. 138 at B19) The applicant responded:[A]pplicant submits that graft

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 3

Not Reported in F.Supp.2d, 2001 WL 253117 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

polymerization techniques are well known in the art, as are emulsion polymerization, suspension polymerization, and the like. One skilled in the art would have no difficulty in finding suitable conditions for such graft polymerization without undue experimentation.

(*Id.* at B21) The examiner allowed all the claims following that explanation. (*Id.* at B24-25)

### B. INFRINGEMENT

The accused product in this case is known by its trade designation, "KHP-300." KHP-300 contains MMA, styrene, natural rubber, and silica. The parties agree that MMA is grafted to natural rubber. The parties also agree that silica is present in the accused product. The parties disagree on whether styrene is grafted to the natural rubber.

### III. STANDARD OF REVIEW

*3 A court shall grant summary judgment only if " the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10 (1986). "Facts that could alter the outcome are ' material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita,* 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)). The court will " view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pennsylvania Coal*

*Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

### IV. DISCUSSION

### A. VALIDITY

#### 1. Anticipation

Poser's first invalidity contention is that claims 1 and 3 are anticipated. A claim is anticipated if each and every limitation is found either expressly or inherently in a single prior art reference. *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.,* 150 F.3d 1354, 1361 (Fed.Cir.1998); *see also P PG Indus., Inc. v. Guardian Indus. Corp.,* 75 F.3d 1558, 1566 (Fed.Cir.1996); *Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1576 (Fed.Cir.1991). "There must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention." *Id.* at 1576. Thus, the factual inquiry relevant to the anticipation analysis is whether a single prior art reference discloses every element of the challenged claim and enables one skilled in the art to make the anticipatory subject matter. *See, e.g., PPG Indus.,* 75 F.3d at 1566.

Poser contends that GB '651 anticipates the claims because it describes a combination of (1) a graft copolymer of methyl methacrylate ("MMA"), styrene, and natural rubber and (2) hard particulate filler. Based on the current record, however, GB '651 is not directed toward a composition which

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                Page 4

Not Reported in F.Supp.2d, 2001 WL 253117 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

allows adhesion to be initiated through the application of pressure, which is a limitation of claim 1.[FN3] GB '651 does not disclose every element of the challenged claim and, therefore, does not anticipate under 35 U.S.C. § 102(b).

> FN3. The court is mindful that "it is contrary to the letter of the patent laws that patents should be granted for old compositions of matter based upon new uses." *In re Shoenwald*, 964 F.2d 1122, 1123 (Fed.Cir.1992), citing *In re Thuau*, 135 F.2d 344, 346, (C .C.P.A.1943). The '128 patent is directed to a composition of matter that allows adhesion to be initiated through the application of pressure. Being capable of adhering to a surface through the application of pressure is a characteristic of a composition rather than a new use. If a prior art reference does not disclose such an adhesive, it cannot anticipate the claims of the '128 patent.

*4 Two of the remaining three prior art references, EP '512 and the '124 patent, likewise contain no mention of being a composition which allows adhesion to be initiated through the application of pressure. Thus, those references do not anticipate based on the current record. Unless Poser can present evidence at trial that the pressure-sensitive limitation is inherently found in GB '651, EP '512, or the '124 patent, Poser is precluded from proffering these references as anticipatory.

The final anticipatory reference, GB '666, "relates to a process for uniting natural or synthetic elastomers with elastomers or other materials." (D.I. 285 at D-12888) The invention provides:
[A] process for uniting synthetic resins, leather, textiles, natural or synthetic elastomers or vulcanisates with natural or synthetic elastomers wherein a graft polymer of an elastomeric polymer .. . and an ester of acrylic or methacrylic acid with a monohydric saturated aliphatic alcohol containing from 1 to 4 carbon atoms is used as a bonding agent.

Advantageously methyl methacrylate is used as the ester component for the formation of the graft polymer.

From a technical point of view, it may be advantageous in many cases to use the polymer in the form of a latex.

The natural or synthetic elastomers to be united with the materials ... may be the co-polymers of butadiene and styrene.... These elastomers are used as vulcanisable mixture containing ... fillers, for example furnace black, channel black, clay, silica and pigment dyes.
The production bond between the materials to be united can be effected in known manner by the cold-sticking method, i.e., by coating both parts with a solution or latex of graft polymers and thereafter pressing them together.

(*Id.* at D-12888-89) (emphasis added). Poser submits that GB '666 contains each claim limitation and, therefore, anticipates the '128 patent. Moore contends that while GB '666 is directed to a process for joining different elastomers with a bonding agent, the silica filler described in the specification is only present in the elastomer materials being bonded and not the adhesive. Poser disagrees. (D.I. 317 at 6) After carefully studying GB '666 and the other evidence of record, the court finds that there is a genuine issue of material fact regarding whether GB '666 teaches a single pressure-sensitive adhesive which contains MMA, styrene, natural rubber, and silica as required by the claims. The court, therefore, denies the motion for summary judgment of invalidity based on anticipation.

### 2. Obviousness

Even if the claims are not anticipated, Poser argues that the claims would have been obvious at the time of the application. A patent is invalid for obviousness
if the differences between the subject matter sought

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 5

Not Reported in F.Supp.2d, 2001 WL 253117 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

*5 35 U.S.C. § 103. The ultimate determination of obviousness is a question of law based on underlying factual inquiries. *See Richardson-Vicks Inc. v. Upjohn Co.,* 122 F.3d 1476, 1479 (Fed.Cir.1997). Those factual inquiries involve consideration of the four so-called Graham factors: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the pertinent art; [FN4] (4) and any secondary considerations of nonobviousness, such as commercial success. *See Graham v. John Deere Co. of Kansas City,* 383 U.S. 1, 17-18 (1966); *B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.,* 72 F.3d 1577, 1582 (Fed.Cir.1996). The existence of each element of a claim in the prior art does not, by itself, demonstrate obviousness. Instead, there must be a "reason, suggestion, or motivation in the prior art that would lead one of ordinary skill in the art to combine the references, and that would also suggest a reasonable likelihood of success." *Smith Indus. Med. Sys., Inc. v. Vital Signs, Inc.,* 183 F.3d 1347, 1353 (Fed.Cir.1999). "Such a suggestion or motivation may come from the references themselves, from knowledge by those skilled in the art that certain references are of special interest in a field, or even from the nature of the problem to be solved." *Id.* at 1356.

> FN4. The factfinder must evaluate the invention, "not through the eyes of the inventor, who may have been of exceptional skill, but as by one of ' ordinary skill." ' *Interconnect Planning Corp. v. Feil,* 774 F.2d 1132, 1138 (Fed.Cir.1985).

Because the court cannot conclude, based on the current record, whether one of ordinary skill in the art would have been motivated to combine the above references or would otherwise conclude that the claims of the '128 patent were obvious at the

time of the application, the court denies the motion for summary judgment of obviousness.

### 3. Enablement

The last invalidity contention addressed by this memorandum opinion is enablement. Both parties moved for summary judgment on this issue. Under the enablement requirement, a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation. *See In re Wright,* 999 F.2d 1557, 1561 (Fed.Cir.1993). As apparent from § 112, a patent specification is required to contain a disclosure, either through illustrative examples or written description, that is sufficient to teach one skilled in the art how to make and use the invention as broadly as it is claimed. *Id.* "[I]t is not necessary that a patent applicant test all the embodiments of his invention; what is necessary is that he provide a disclosure sufficient to enable one skilled in the art to carry out the invention commensurate with the scope of his claims." *Amgen, Inc. v. Chugai Pharm. Co., Ltd.,* 927 F.2d 1200, 1213 (Fed.Cir.1991) (internal citation omitted); accord *In re Vaeck,* 947 F.2d 488, 496 (Fed.Cir.1991) ("It is well settled that patent applicants are not required to disclose every species encompassed by their claims, even in an unpredictable art."). Furthermore, a patent need not teach, and preferably omits, that which is well known in the art. *See Ajinomoto Co. v. Archer-Daniels-Midland Co.,* 228 F.3d 1338, 1345 (Fed.Cir.2000), citing, *Hybritech, Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1384 (Fed.Cir.1986).

*6 Poser's expert witness, Dr. Ray L. Hauser, points to seven different ways to make a graft copolymer with natural rubber, methyl methacrylate, and styrene. For example, different polymerization conditions may include:
a. Natural rubber latex + methyl methacrylate + styrene with sufficient time for dissolution, followed by uniform polymerization.
b. Natural rubber latex + methyl methacrylate with sufficient time for dissolution, followed by uniform polymerization, followed by addition of styrene monomer with sufficient time for dissolution,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 6

Not Reported in F.Supp.2d, 2001 WL 253117 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

followed by secondary polymerization.

(D.I. 285 at tab 5, p. 7) Dr. Hauser points to five more possibilities and concludes that "[t]he following polymerization conditions could provide very different products." (*Id.*) Based on that evidence, Poser argues that one of ordinary skill in the art would not know, based on the disclosure, how to make and use the invention.

Poser's other expert, Dr. H. James Harwood, gave a similar opinion on lack of enablement. Dr. Harwood said:
There are a number of different ways to make graft copolymers. For instance, one can attach multiple monomers simultaneously onto a single base polymer to achieve copolymer side chains. Alternatively, one can graft monomers sequentially onto the base polymer to achieve homopolymer side chains. Furthermore, the length of these grafted chains is determined by the rate in which the graft polymerization is initiated. This will depend on initiator concentration, initiator type, and the temperature of the reaction. Graft copolymers with side chains of different lengths can exhibit markedly different properties. Also, the average number of grafts per chain can be influenced by polymerization conditions. The method employed by [the patent applicant] is not identified. Therefore, the '128 patent is invalid because it does not provide one of ordinary skill in the art with sufficient information to practice the invention.

(D.I. 185 at tab 6, p. 4)

Neither Dr. Hauser's nor Dr. Harwood's statement meets the clear and convincing threshold required for summary judgment of invalidity. Dr. Hauser says that the different possible polymerization conditions could provide very different products. Dr. Hauser does not say, however, that these very different products would not be pressure-sensitive adhesives made of a graft copolymer of natural rubber, MMA, and styrene with a hard particulate dispersed in the latex. Likewise, Dr. Harwood says that different techniques can result in "markedly different properties;" but he never says that these different properties fall outside the scope of the claims.

The '128 patent is directed toward a composition of matter that has the characteristic of being a pressure-sensitive adhesive. Since the patentee did not claim the process used to make the pressure-sensitive adhesive, merely saying that there are multiple ways of making the claimed composition is insufficient to sustain an lack of enablement defense. Poser's motion for summary judgment of lack of enablement is denied.

*7 Moore's motion for summary judgment of enablement is granted. A patent is presumed to be valid. 35 U.S.C. § 282. Poser has the burden of proving lack of enablement by clear and convincing evidence. *Apple Computer, Inc. v. Articulate Sys., Inc.,* 234 F.2d 14, 20 (Fed.Cir.2000). Poser's defense to Moore's motion for summary judgment of enablement is supported only by the statements of Drs. Hauser and Harwood. (D.I. 283 at 16-18; D.I. 317 at 14) If the issue of enablement were to go to trial, the testimony of Poser's expert witnesses would be limited to the information contained in their expert reports. Because their expert reports contain nothing that indicates that one of ordinary skill in the art would not know how to make a pressure-sensitive adhesive that falls within the claims of the patent, Poser will not be permitted to go forward with this defense.

## B. INFRINGEMENT

Because the parties and their experts disagree on whether styrene is grafted to natural rubber, the court finds that there is a genuine issue of material fact for trial. Namely, are styrene and methyl methacrylate, and not substances made from styrene and methyl methacrylate, grafted on a common natural rubber backbone in the form of a latex? The court, therefore, denies both Moore's motion for partial summary judgment of infringement of claims 1 and 3 of the '128 patent (D.I.237) and Poser's motion for partial summary judgment of infringement of the '128 patent (D.I.255).

## V. CONCLUSION

For the foregoing reasons, the court denies Poser's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 7

Not Reported in F.Supp.2d, 2001 WL 253117 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

motion for partial summary judgment that the '128
patent invalid. (D.I.281) Moore's motion for partial
summary judgment of patent validity (D.I.286) is
granted. Both parties' motions for partial summary
judgment of infringement (D.I.237, 255) are denied.
An appropriate order shall issue.

D.Del.,2001.
Moore North America, Inc. v. Poser Business
Forms, Inc.
Not Reported in F.Supp.2d, 2001 WL 253117
(D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.