IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KIMBRA CRISWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-321 (GMS) |
| | ) | |
| LYDIA ADAIR MCFADDEN and | ) | |
| CHRISTIANA CARE HEALTH | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM**

**I.    INTRODUCTION**

On May 23, 2005, Kimbra Criswell ("Criswell") filed this personal injury action against Lydia Adair McFadden ("McFadden") and Christiana Care Health Services, Inc. ("CCHS") (collectively, the "defendants"). The complaint alleges that McFadden and CCHS, her employer, were negligent, thereby causing Criswell's injuries. Presently before the court is the defendants' motion for summary judgment. For the following reasons, the court will grant the motion.

**II.    BACKGROUND**

The following facts are taken from the parties' submissions and do not constitute findings of fact. On September 17, 2001, Criswell began working with Aureus Medical ("Aureus"), a healthcare staffing agency. (See D.I. 38, at A9.) Criswell worked as a full-time traveling x-ray technologist in and at hospitals that were short-staffed, pursuant to contracts between Aureus and the hospitals. (See id.) In April 2002, Criswell started working at Christiana Hospital ("Christiana"), which is owned by CCHS, in Newark, Delaware, and had been working there for approximately six weeks, when she was injured during work. (D.I. 4, at 3; D.I. 38, at A10.) On May 23, 2002, Criswell and McFadden, another x-ray technologist, were assigned to the same x-ray

job, and were walking down Christiana's hallways to get the portable x-ray machine, having a conversation. (Id. at A14.) They approached the portable x-ray machine, which was parked in a hallway. (Id.) McFadden went to the control part of the x-ray machine, while Criswell walked to the front of the machine and unplugged it from the wall, so the two of them could move it. (Id.) The two women continued their conversation face-to-face and, once the conversation had ended, Criswell turned 180 degrees so that her back was facing McFadden. (Id.) Criswell took one step forward with her right foot, when McFadden caused the x-ray machine to move forward and come into contact with Criswell's left leg and foot. (Id.; see D.I. 1 ¶¶ 9, 12.) Criswell fell to her knees in pain. (D.I. 28, at A19.) After a few minutes, she got up and got some ice for her leg, and then sat down with her leg elevated, while McFadden left to take the x-ray. (Id. at A19-A20.) About an hour later, Criswell reported to Employee Health, where she had her leg examined, had an x-ray taken, and received crutches. (Id. at A22.) Criswell was later diagnosed with a tear of the Achilles tendon and RSD, or reflex sympathetic dystrophy, which is a chronic condition characterized by severe pain following injury to bone or soft tissue. (Id. at 25, 27; see http://en.wikipedia.org/wiki/Reflex_sympathetic_dystrophy.) As a result of her injuries, Criswell can no longer work as a full time x-ray technologist. (D.I. 38, at A81-A82.)

### III.   STANDARD OF REVIEW

A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Biener v. Calio*, 361 F.3d 206 (3d Cir. 2004). In reviewing summary judgment decisions, the Third Circuit views all evidence and draws all inferences in the light most

favorable to the non-movant, affirming if no reasonable jury could find for the non-movant. *See Whiteland Woods, L.P. v. Twp. of West Whiteland*, 193 F.3d 177, 180 (3d Cir.1999). Thus, a trial court should only grant summary judgment if it determines that no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If a moving party has demonstrated the absence of a genuine issue of material fact – meaning that no reasonable jury could find in the nonmoving party's favor based on the record as a whole – concerns regarding the credibility of witnesses cannot defeat summary judgment. Instead, the nonmoving party must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Liberty Lobby*, 477 U.S. at 256-57 (citation omitted). Thus, summary judgment is particularly appropriate where, notwithstanding issues of credibility, the nonmoving party has presented no evidence or inferences that would allow a reasonable mind to rule in its favor. In this situation, it may be said that the record as a whole points in one direction and the dispute is not "genuine." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

## IV.   DISCUSSION

The defendants have moved for summary judgment, claiming that Criswell's complaint is barred by the Delaware Worker's Compensation Act (the "Act"), Del. Code Ann. tit. 19, § 2304. The defendants maintain that an injured worker cannot bring suit against another employee or her employer for damages that are compensable under the Act. According to the defendants, Criswell was an employee of CCHS and McFadden's co-employee at the time of the accident. Conversely, Criswell contends that she was an independent contractor with CCHS at the time of the accident and, as a result, is not barred from recovering damages from the defendants. Therefore, the sole issue presented by the defendants' summary judgment motion is whether Criswell was an employee of

CCHS when her foot was injured by the x-ray machine.

The Act states that "[e]very employer and employee . . . shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies." Del. Code Ann. tit. 19, § 2304; *see Kofron v. Amoco Chems. Corp.*, 441 A.2d 226 (Del. 1982). Under Delaware law, an employee is "every person in service of any corporation (private, public, municipal or quasi-public), association, firm or person, excepting those employees excluded by this subchapter, under any contract of hire, express or implied, oral or written, or performing services for a valuable consideration, . . . excluding any person whose employment is casual and not in the regular course of the trade, business, profession or occupation of his employer."[1] Del. Code Ann. tit. 19, § 2301. The Act further provides that "No contractor or subcontractor shall receive compensation under this chapter . . ." Del. Code Ann. tit. 19, § 2311(b)(1).

The existence of an employer-employee relationship is an issue of law. *Porter v. Pathfinder Servs.*, 683 A.2d 40, 42 (Del. 1996). In *Lester C. Newton Trucking Co. v. Neal*, the Delaware Supreme Court adopted four criteria that courts must consider to determine whether a worker is an "employee" under the Act: "(1) who hired the employee; (2) who may discharge the employee; (3) who pays the employee's wages; and (4) who has the power to control the conduct of the employee

---

[1] An "independent contractor," on the other hand, is defined as "any person not excluded from mandatory coverage under provisions of this chapter, who performs work or provides services for a contractor, subcontractor or other 'contracting entity' in return for remuneration and/or other valuable considerations, but who is not an employee of the contractor, subcontractor or other 'contracting entity' or any other person or entity with respect to the work performed or the services provided." Del. Code Ann. tit. 19, § 2311(a)(2).

when [s]he is performing the particular job in question." 204 A.2d 393, 395 (Del. 1964); *see Falconi v. Coombs & Coombs, Inc.*, 902 A.2d 1094, 1099 (Del. 2006) (reciting the *Lester C. Newton* factors). In making its determination, the court gives the greatest weight to the issue of control. *See Porter*, 683 A.2d at 42.

The defendants contend that applying the *Lester C. Newton* factors to Criswell's employment relationship with CCHS results in a finding that she was an employee of CCHS and McFadden's co-employee. In support of their motion, the defendants rely on the deposition testimony of Criswell and Dawn Shutak ("Shutak"), a senior x-ray technologist and dayshift supervisor; Aureus' contract with CCHS and its agreement regarding Criswell's position at CCHS; and an affidavit from Maryellen Hofmann ("Hofmann"), the Radiology Section Supervisor at CCHS. In response, Criswell asserts that she was an independent contractor for CCHS and, therefore, is entitled to damages arising from her injury. Criswell also relies on her deposition testimony, as well as Shutak's to support her assertions. After having considered the parties submissions and arguments on the issue, the court concludes that the record evidence demonstrates that Criswell was an employee of CCHS, not an independent contractor.

The first *Lester C. Newton* factor requires the court to consider who hired the employee. In the present case, Aureus originally hired Criswell. As Criswell testified during her deposition, before the accident she had been working with Aureus for approximately 19 months in different hospitals throughout the United States.[2] (D.I. 38, at A7-A9.) Additionally, Criswell testified that she never signed any contracts with CCHS. (Id. at A78.) Shutak also testified that, although

---

[2] Prior to working at CCHS, Criswell had worked for Aureus in Florida; Cambridge, Massachusetts; Las Vegas, Nevada; Scottsdale, Arizona; and Charlottesville, Virginia. (D.I. 38, at A7-A9.)

5

Criswell was interviewed by CCHS, the hospital contracted her through Aureus. (D.I. 45 Ex. A, at 18, 20.) The contract between CCHS and Aureus, however, seems inconsistent with the testimony provided by Criswell and Shutak, and states that CCHS "is solely responsible for making the selection decision of HC [Healthcare] Professionals presented by Aureus." (D.I. 39, at A90.) Thus, this factor is a close call for the court. Nonetheless, given the fact that the court must view the underlying facts and all reasonable inferences therefrom in the light most favorable to Criswell, the non-movant, the court finds that the first factor weighs slightly in favor of treating Criswell as an independent contractor. This finding does not end the court's inquiry, though, and it now considers the remaining factors.

*Lester C. Newton* advises courts to consider who may discharge the employee. With respect to this factor, the court finds that the record evidence demonstrates that CCHS had the power to discharge Criswell. The plain terms of the contract between CCHS and Aureus state that CCHS "may require that Aureus remove a specific HC Professional only for 'cause' which will be documented in a written notice provided to Aureus. 'Cause' will be defined as any material violation of client policies, insubordination, unsatisfactory attendance or performance, misconduct or violation of drug abuse policies." (D.I. 38, at A92.) Thus, CCHS could remove Criswell if she had violated client policies, did not attend her scheduled shifts, or did not perform. The language of the agreement demonstrates to the court that CCHS had the power to discharge Criswell. Moreover, Shutak testified that, while she did not have the direct authority to fire Criswell, CCHS could fire Criswell, and she could have input toward that decision.[3] (D.I. 45 Ex. A, at 27, 32.)

---

[3] Shutak further testified, by way of example, that CCHS had fired at least one person from a traveling company who reported to work smelling of alcohol. (D.I. 45 Ex. A, at 32.) Shutak also stated that, if she was unhappy with Criswell's performance, she would have had the

Based on this evidence the court concludes that the second *Lester C. Newton* factor weighs in favor of treating Criswell as a CCHS employee.

The court next considers who paid Criswell's wages. Criswell testified that, at the time of the accident, she received her paycheck from Aureus by direct deposit. (D.I. 38, at A76, A78.) Criswell further testified that Aureus provided her with fully furnished housing, a vehicle, and a per diem allowance. (D.I. 38, at A74, A80.) According to Criswell, Aureus also provided her with a 401(k) package, dental and health insurance, and reimbursed her for her cable and telephone. (Id. at A80-A81). Finally, Criswell testified that Aureus paid for her worker's compensation insurance coverage. (Id. at 77.) The letter agreement between Aureus and CCHS regarding Criswell's employment, however, tells a different story. Pursuant to the agreement, CCHS paid Aureus an hourly rate of $50.88. (D.I. 38, at A89.) Of this $50.88, Criswell made $25 per hour, and the remainder of the money was used by Aureus to pay "all payroll taxes and worker's compensation insurance expenses." (D.I. 38, at A50; D.I. 39, at A89.) Moreover, pursuant to the terms of the agreement, CCHS, not Aureus, paid for Criswell's incidental expenses, including housing arrangements with local phone, basic cable, and utilities, a rental car, a per diem allowance, and mileage reimbursement to and from assignments. (D.I. 39, at A89.) Accordingly, although Aureus was responsible for issuing Criswell her paycheck, it was CCHS, not Aureus that paid her hourly rate, payroll taxes, worker's compensation expenses, and incidental expenses. As such, this factor weighs in favor of finding that Criswell was an employee of CCHS, rather than an independent contractor.

Finally, the court considers the most important *Lester C. Newton* factor – who had the power

---

authority to discharge her through Hofmann. (Id. at 49.)

to control Criswell's conduct when she was performing her job as an x-ray technologist. Criswell argues that she was "a truly independent worker" while she performed her job at CCHS. (D.I. 44, at 9.) The court cannot agree for several reasons. First, pursuant to the terms of the contract between Aureus and CCHS, all Healthcare Professionals accepted by CCHS "shall, when rendering services, *be under the direction and supervision of [CCHS] and not Aureus*." (D.I. 39, at A91) (emphasis added). The contract also states that CCHS "shall be recognized as the on-site supervisor of professional performance and daily assignment responsibilities." (Id.) Thus, the contract by its plain and unambiguous terms cedes supervisory responsibility to CCHS. Further, Hofmann's affidavit states that she "was responsible for establishing [Criswell's] work schedule, telling her where to report, and supervising and directing her work at CCHS." (D.I. 38, at A96.) Shutak also testified that Criswell would report to her if anything were to happen during her shift. (D.I. 45 Ex. A, at 30.) Moreover, CCHS provided Criswell with all of the equipment that she used to perform her job duties, including the x-ray equipment, films, and lead bibs. (See Id.; see also D.I. 45 Ex. A, at 48.; D.I. 38, at 12.) Criswell also had to comply with CCHS' rules, regulations and policies. (D.I. 39, at A91; see D.I. 45 Ex. A, at 46.) Finally, Criswell reported to Employee Health after her accident. (D.I. 38, at 15.) Shutak described "Employee Health" as the department to which a sick employee or an employee who is injured on the job can go to be examined. (D.I. 45 Ex. A, at 40.) According to Shutak, only CCHS employees are sent to Employee Health; those who do not work for CCHS are sent to the emergency department. (Id. at 47.) Based on these undisputed facts, the court concludes that Criswell's conduct was under the supervision and control of CCHS.[4]

---

[4] Criswell makes much of the fact that Shutak testified Criswell was qualified to operate the x-ray machinery without her supervision. This argument misses the mark, however, as Shutak further explained that CCHS expected Aureus to supply it only with qualified x-ray

In the present case, three of the four *Lester C. Newton* factors, including the most important factor of control, weigh heavily in favor of a finding that Criswell was an employee of CCHS, not an independent contractor, when she was injured in May 2002. As such, the court concludes that Criswell was an employee of CCHS and McFadden's co-employee. Therefore, summary judgment in favor of the defendants is appropriate, as Criswell's recovery for her injuries is limited to worker's compensation.


Dated: April 5, 2007                                     /s/ Gregory M. Sleet
                                                         UNITED STATES DISTRICT JUDGE

---

technologists. (See D.I. 45 Ex. A, at 25.) Moreover, Shutak testified that Criswell had an orientation when she began her duties at CCHS, which included learning about the layout of the x-ray rooms, how CCHS developed its films, the process in which the x-ray technologists get their films read, and how the technologists handle stats versus routine x-rays. (Id.) Therefore, the fact that Criswell was qualified to operate the x-ray machinery without supervision has little bearing on the issue of control.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KIMBRA CRISWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-321 (GMS) |
| | ) | |
| LYDIA ADAIR MCFADDEN and | ) | |
| CHRISTIANA CARE HEALTH | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The defendants' Motion for Summary Judgment (D.I. 36) is GRANTED.

2. Judgment is hereby entered in favor of the defendants.

3. The Clerk of the Court is directed to close this case.

Dated: April 5, 2007         /s/ Gregory M. Sleet
                             UNITED STATES DISTRICT JUDGE